******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TAMARA DORFMAN *v.* LIBERTY MUTUAL
FIRE INSURANCE COMPANY
(AC 45389)

Alvord, Elgo and Seeley, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant, her automobile
insurance provider, claiming, inter alia, that the defendant's pleading
conduct in a prior action involving the parties amounted to vexatious
litigation. The plaintiff had been involved in a motor vehicle collision
with S, who failed to stop his vehicle at a stop sign. During its yearlong
investigation of the plaintiff's claim for underinsured motorist benefits,
the defendant acquired the police report regarding the collision, the
plaintiff's recorded statement and the recorded statement of a witness
to the collision who was not listed in the police report. The defendant's
claims specialists determined that S was 100 percent liable for the
collision and noted their findings in the claim file. The plaintiff com-
menced the prior action against S, who was underinsured. After citing
in the defendant as an additional party, the plaintiff alleged, inter alia,
a breach of contract claim against the defendant for its failure to pay
her underinsured motorist benefits, as well as claims for breach of the
implied covenant of good faith and fair dealing and violation of the
Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.)
based on alleged violations of the Connecticut Unfair Insurance Prac-
tices Act (CUIPA) (§ 38a-815 et seq.). Before the defendant filed an
answer, the plaintiff settled her claim with S for the limit of his insurance
policy and withdrew the action against him. The defendant hired attor-
neys to represent it in connection with the plaintiff's action but deliber-
ately withheld from them its file notes, which included the recorded
statement and the identity of the witness to the collision. In the defen-
dant's initial answer to the complaint, which was filed one year after
the conclusion of its investigation into the plaintiff's claim, the defendant
denied or stated that it did not have sufficient information to admit the
plaintiff's allegations regarding the cause of the collision and her injuries,
and asserted a special defense of contributory negligence. The defendant
provided false responses to the plaintiff's discovery requests, including
that it did not know of the existence of a witness to the collision or
whether any recorded statements of witnesses existed. In the plaintiff's
deposition of the defendant, its designee admitted that the defendant
had been aware of the witness to the collision and his recorded statement
but failed to disclose that information in its interrogatory responses.
Prior to trial, the defendant withdrew its special defense. The defendant
then admitted liability at trial on the breach of contract claim, and a
jury awarded the plaintiff damages. The trial court then granted in part

the defendant's motion to dismiss the plaintiff's other claims. The court dismissed her claim for breach of the implied covenant of good faith and fair dealing on the ground that it was barred by the litigation privilege, as it was predicated on communications and statements filed in the course of and related to a judicial proceeding. The court also dismissed in part her claim for a violation of CUTPA based on the defendant's alleged violation of CUIPA, to the extent that the defendant had a business practice of responding falsely to discovery requests. The court rendered judgment for the plaintiff on the breach of contract claim and for the defendant on the extracontractual claims, and our Supreme Court in *Dorfman* v. *Smith* (342 Conn. 582) affirmed the trial court's judgment. The plaintiff then filed the present action, alleging claims for common-law and statutory (§ 52-568 (1) and (2)) vexatious litigation and violations of CUTPA based on the defendant's alleged violations of CUIPA. Among other things, the plaintiff claimed that, in the prior action, the defendant had asserted its contributory negligence special defense and filed false pleadings without probable cause and with malice, and refused to admit certain allegations of her complaint, despite having had the information gathered during its investigation of the plaintiff's claim. The trial court granted the defendant's motion for summary judgment, in which it contended, inter alia, that all of the plaintiff's claims were barred by the litigation privilege and that its pleadings in the prior action were filed with probable cause and without malice. On the plaintiff's appeal to this court from the judgment of the trial court, *held*:

1. The defendant could not prevail on its claim that a vexatious litigation action cannot be premised on allegedly false answers to a complaint in a prior action, as, under the particular facts of this case, the plaintiff's allegations concerning the defendant's alleged bad faith pleading in the prior action properly asserted causes of action for vexatious litigation:

   a. This court determined that Connecticut case law has expressed agreement with § 674 of the Restatement (Second) of Torts, which permits such a cause of action for a party's conduct in continuing litigation without probable cause, and the plaintiff's allegations addressed the defendant's conduct that prolonged the *Smith* action with respect to the breach of conduct count against the defendant, for which the defendant eventually admitted liability; moreover, this court did not believe, contrary to the defendant's contention, that, under the particular circumstances at issue, its decision would open floodgates to litigation or impose unreasonable pleading requirements on parties, as vexatious litigation actions contain inherent safeguards, including a lower threshold to establish probable cause and requirements that plaintiffs demonstrate a lack of probable cause for the prior proceeding, that the prior proceeding terminated in their favor and a showing of malice when treble damages are sought under § 52-568 (2); furthermore, the possibility that a vexatious litigation claim can be based on a bad faith denial in an answer did not mean that the ability of defendants to hold plaintiffs to their proof will

be chilled or that an inartfully pleaded answer or mere denial of an allegation in a civil proceeding will subject individuals to vexatious litigation actions, as it typically will be difficult to establish a lack of probable cause when discovery in most cases is conducted after the filing of an answer, and the lack of probable cause requirement acts as a formidable barrier to baseless claims and serves to minimize any chilling effect on zealous advocacy.

b. The defendant's claim that the plaintiff's remedy for untrue or unfounded allegations in a complaint was limited to sanctions under the applicable statute (§ 52-99) and rule of practice (§ 10-5) was unavailing; our Supreme Court in *Smith* stated that a vexatious litigation action was one of many remedies available to the plaintiff in challenging the defendant's conduct, which included a court's inherent authority to sanction parties for litigation misconduct, and neither § 52-99 nor Practice Book § 10-5 include language indicating that they are the exclusive remedy for untrue pleadings.

c. This court concluded that the defendant's denials of allegations in the prior action that it allegedly knew to be true constituted the assertion of a defense within the meaning of § 52-568: contrary to the defendant's claim that the phrase "asserts a defense" in § 52-568 should not be applied to a defendant's answer, denial or plea, this court determined that, although § 52-568 does not define "defense," the commonly used dictionary definition of "defense" includes a denial and, thus, it would have been superfluous for the legislature to add "denial" to the statutory language; moreover, the general denial of a complaint's factual allegations is, in essence, the assertion of a defense to those allegations, and the defendant presented no authority suggesting the contrary or that "defense" in § 52-568 must be limited to special defenses; furthermore, to conclude that a denial in an answer is not a defense would contravene the purpose of § 52-568 in making clear that it is the strong public policy of the state to discourage dishonesty during the litigation process.

2. The trial court improperly granted the defendant's motion for summary judgment as to the plaintiff's vexatious litigation claims, the court having applied an incorrect legal standard in making its probable cause determination: the court focused on and limited its analysis to whether issues of material fact existed as to the cause of the plaintiff's injuries when it instead should have looked critically at each of the defendant's representations at issue, alongside the information within the defendant's knowledge at the time it made those representations, to determine if issues of material fact existed as to whether there was probable cause for the defendant's denials of allegations unrelated to the plaintiff's injuries and its assertion of contributory negligence as a special defense; moreover, the court did not take into account the defendant's denials of allegations pertaining to how the collision occurred and whether it was caused by S, as well as the assertion of contributory negligence, when the defendant's own internal investigation indicated that S was 100

percent responsible for the collision; furthermore, the court improperly concluded that the defendant met its burden of showing that no issue of material fact existed as to whether it had probable cause for pleading as it did, as the court did not consider that the defendant did not submit documentary evidence or affidavits in support of its summary judgment motion to demonstrate that it lacked knowledge of the contents of the documents and information gathered as part of its investigation, or that it had an objectively reasonable, good faith belief in the facts alleged in its answers and the validity of its special defense; accordingly, because the underlying facts that formed the basis for determining whether the defendant had probable cause to plead as it did were disputed, and the court failed to address the defendant's other arguments in support of its motion for summary judgment, the trial court's judgment was reversed as to the vexatious litigation claims and the case was remanded for further proceedings.

3. The plaintiff's claim that the trial court improperly rendered summary judgment on the CUTPA and CUIPA counts of her complaint was unavailing; although the court applied an incorrect legal standard in concluding that its prior probable cause determination made it unnecessary to address those claims, this court upheld the summary judgment on the alternative ground that those claims were barred by the litigation privilege, as the CUTPA and CUIPA counts were based on the same conduct underlying the vexatious litigation claims, which the court in *Smith* determined were protected by the litigation privilege.

(*One judge concurring in part and dissenting in part*)

Argued September 12, 2023—officially released August 20, 2024

*Procedural History*

Action to recover damages for, inter alia, vexatious litigation, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Noble, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed in part*; *further proceedings*.

*David P. Friedman*, with whom, on the brief, were *Marilyn B. Fagelson*, *Julie A. Lavoie* and *Leonard M. Isaac*, for the appellant (plaintiff).

*Philip T. Newbury, Jr.*, for the appellee (defendant).

*Opinion*

SEELEY, J. The plaintiff, Tamara Dorfman, appeals from the summary judgment rendered by the trial court in favor of the defendant, Liberty Mutual Fire Insurance Company, in this action for, inter alia, vexatious litigation. On appeal, the plaintiff claims that the court (1) improperly granted the defendant's motion for summary judgment as to the counts of her complaint alleging vexatious litigation on the basis of its determination that certain pleadings in a prior action between the parties were filed by the defendant with probable cause, (2) misapplied the proper standard of proof in granting the defendant's motion for summary judgment as to the vexatious litigation counts, (3) improperly denied the plaintiff the ability to obtain meaningful discovery related to her claims of vexatious litigation prior to granting the defendant's motion for summary judgment,[1] and (4) did not engage in the proper analysis when it granted the defendant's motion for summary judgment as to the counts of her complaint alleging violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-815 et seq. We agree with the plaintiff's first two claims and, thus, reverse in part the judgment of the court.

The following facts and procedural history, as alleged in the complaint, construed in the light most favorable to the plaintiff as the nonmoving party, and contained in the record or as previously set forth by our Supreme Court in a prior action involving the parties, are relevant to our resolution of this appeal. In 2014, the plaintiff sustained serious bodily injuries when her motor vehicle collided with a vehicle operated by Joscelyn M. Smith, who failed to stop his vehicle at a stop sign. At

---

[1] See footnote 37 of this opinion.

the time of the collision, the plaintiff had a motor vehicle insurance policy with the defendant, which contained a provision for uninsured-underinsured motorist coverage. By letter dated November 4, 2014, the defendant was notified of the accident and of a potential claim for underinsured motorist benefits by the plaintiff.

"As part of its general business practices, the defendant investigated the collision to determine the cause and legal responsibility. In investigating the plaintiff's claim, the defendant acquired the police report regarding the collision, the plaintiff's recorded statement, and the recorded statement of Birbahadu Guman, a witness to the collision who was not listed in the police report. The report and the statements all noted Smith's failure to stop at the stop sign. Based on this information, two claims specialists employed by the defendant both concluded that Smith was 100 percent liable for the collision and noted their findings in the claim file [file notes]. The defendant notified the plaintiff that her right to pursue her claim was conditioned on her providing an affidavit of no excess insurance." *Dorfman* v. *Smith*, 342 Conn. 582, 586, 271 A.3d 53 (2022).

On September 29, 2015, the plaintiff commenced an action against Smith (*Smith* action), who was underinsured.[2] In December, 2015, the plaintiff moved for and was granted permission to cite in the defendant as an additional party in the *Smith* action for the purpose of seeking underinsured motorist benefits pursuant to her insurance policy with the defendant. The plaintiff alleged a claim against the defendant for breach of contract for failure to pay benefits. Before the defendant filed an answer to the complaint, the plaintiff settled her claim with Smith for the limit of his policy and withdrew her claim against him. The defendant received

---

[2] Smith's insurance policy had a limit of $50,000, and the plaintiff's damages exceeded that amount.

a signed release of the plaintiff's claim against Smith for his policy limit of $50,000 on January 5, 2016.

"The defendant hired attorneys to represent it in connection with the plaintiff's claim but deliberately withheld from them its file notes regarding the claim, Guman's name and existence, and Guman's recorded statement, even though it knew this information was necessary for its attorneys to prepare accurate responses to the plaintiff's complaint and discovery requests. In answering the complaint [on May 17, 2016], the defendant pleaded that either it denied or did not have sufficient information to admit the allegations that Smith had failed to stop at a stop sign, causing the collision and the plaintiff's resulting injuries. The defendant also asserted a special defense of contributory negligence,[3] even though it knew this to be false. . . .

"The plaintiff's attorney then noticed the defendant's deposition to address, in part, the factual basis behind its answer and special defense. . . . Additionally, the defendant provided false responses to the plaintiff's discovery requests, including that it did not know of the existence of any witnesses not listed in the police report and whether any recorded statements existed. In further response to the deposition notice, the defendant's corporate designee testified under oath, admitting that '[t]here was no basis in fact for [the defendant's] accusation that [the plaintiff] was in any way responsible for causing the accident' and that the defendant 'had known that there was nothing [the plaintiff]

---

[3] "[A]lthough Connecticut has adopted the doctrine of comparative negligence; see General Statutes § 52-572h (b); our statutes retain the term contributory negligence. See, e.g., General Statutes §§ 52-114 and 52-572h (b)." (Internal quotation marks omitted.) *Stafford* v. *Roadway*, 312 Conn. 184, 185 n.3, 93 A.3d 1058 (2014). Because the parties, the trial court, and our Supreme Court in *Dorfman* v. *Smith*, supra, 342 Conn. 582, all have used the term contributory negligence, we do so as well throughout this opinion. See *Wager* v. *Moore*, 193 Conn. App. 608, 611 n.2, 220 A.3d 48 (2019).

could have done to avoid the accident . . . .' The defendant's designee also admitted that the defendant was aware that Guman had witnessed the accident and made a recorded statement but failed to disclose this information in its interrogatory responses. On the basis of this conduct, the plaintiff allege[d] that the defendant 'used intentional misstatements, intentional misrepresentations, intentionally deceptive answers, and violated established rules of conduct in litigation,' and 'knowingly and intentionally engaged in dishonest and sinister litigation practices by taking legal positions that were without factual support' to try to prevent the plaintiff from receiving the benefits owed to her under the contract.

"The defendant's designee also testified under oath that, in addition to this misconduct, '[the defendant] did not single out [the plaintiff] for special or unique treatment when it conditioned [her] receipt of [underinsured motorist] benefits [on] the provision of an affidavit of no excess insurance but was instead pursuing conduct that Liberty Mutual Corporation routinely takes in its handling of claims from other policyholders as well.' Similarly, the defendant's designee 'testified under oath that [the defendant] did not single out [the plaintiff] for special or unique treatment when it responded falsely to [her] discovery requests.'

"Following this deposition, the trial court granted the plaintiff permission to amend her complaint to include claims for breach of the implied covenant of good faith and fair dealing, negligent infliction of emotional distress, and violation of CUTPA based on a violation of CUIPA. The defendant moved to bifurcate the breach of contract claim from the extracontractual claims, which the trial court granted. Prior to trial on the breach of contract claim, the defendant withdrew its special defense of contributory negligence. At trial on the

breach of contract claim, the defendant admitted liability, and a jury awarded the plaintiff $169,928.[4]

"After the verdict, the defendant moved to dismiss the remaining claims for lack of subject matter jurisdiction on the ground that the litigation privilege barred those claims. The trial court granted the motion in part and denied it in part. Specifically, as to the plaintiff's claims for breach of the implied covenant of good faith and fair dealing and negligent infliction of emotional distress, the trial court held that, because the claims were predicated on communications and statements filed in the course of and related to a judicial proceeding, the litigation privilege applied. For the same reason, as to the plaintiff's claim for violation of CUTPA based on a violation of CUIPA, the trial court determined that the allegations regarding a business practice of responding falsely to discovery requests also were privileged. The trial court determined, however, that, to the extent the plaintiff's CUTPA claim alleged that the defendant maintained an improper business practice of conditioning receipt of underinsured motorist benefits on the provision of an affidavit of no excess insurance, in violation of General Statutes § 38a-336c (c), the litigation privilege did not bar such a claim because this practice did not occur during the judicial proceedings but occurred before the action commenced. Thus, the trial court granted the motion to dismiss except as to the plaintiff's CUTPA claim to the extent it was premised on a violation of § 38a-336c (c).

"The plaintiff appealed from the trial court's decision on the defendant's motion to dismiss, but [this court] dismissed the appeal for lack of a final judgment in light of the continued viability of the CUTPA claim. The plaintiff subsequently requested and received permission to amend her complaint to remove all allegations

---

[4] After accounting for the $50,000 that the plaintiff had received in settlement from Smith, the court reduced the amount of the jury award to $119,928.

regarding the alleged violation of § 38a-336c (c). Because the alleged violation of § 38a-336c (c) was the only claim to have survived the motion to dismiss, the trial court determined that the withdrawal of these allegations effectively withdrew this theory of liability. Accordingly, the court rendered judgment in favor of the defendant on all of the plaintiff's extracontractual claims. The plaintiff then appealed to [this court]. The appeal was then transferred to [our Supreme Court] pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1." (Footnotes added.) *Dorfman* v. *Smith*, supra, 342 Conn. 587–90. Our Supreme Court affirmed the judgment dismissing the remaining claims on the ground of the litigation privilege. Id., 586.

After the dismissal of her claims and during the pendency of the appeal in the *Smith* action to our Supreme Court, the plaintiff commenced the present action against the defendant on August 27, 2019. The complaint in the present action, filed September 3, 2019, has five counts. Count one alleges a claim of common-law vexatious litigation based on the following allegations concerning the defendant's pleading conduct in the *Smith* action. Specifically, the plaintiff alleges that, despite the information and documentation the defendant had gathered during its investigation of the collision that was completed on May 26, 2015, in the *Smith* action, the defendant asserted in its initial answer, filed May 17, 2016, and continued to assert in its subsequent amended answer, filed August 3, 2016, that it lacked sufficient information to admit or deny the allegations of the plaintiff's amended complaint in the *Smith* action that (1) Smith failed to stop or slow his vehicle when he entered the intersection, causing the collision with the plaintiff's vehicle (paragraph 6 *Smith* action complaint), (2) the collision and resulting injuries to the plaintiff were caused by Smith's negligence (paragraph 7 *Smith* action complaint), (3) the plaintiff sustained

physical injuries, some of which were permanent in nature, as a direct and proximate cause of Smith's negligence (paragraph 8 *Smith* action complaint), (4) the plaintiff incurred expenses for medical care and treatment as a result of Smith's negligence, lost wages from missing work due to the injuries sustained in the collision and has been permanently impaired in her ability to enjoy life's activities (paragraphs 9 through 11 *Smith* action complaint), (5) Smith was underinsured at the time of the collision (paragraph 15 *Smith* action complaint), (6) the plaintiff complied with her duties under her insurance policy with the defendant (paragraph 16 *Smith* action complaint), and (7) the defendant is liable to the plaintiff under the terms of that policy (paragraph 17 *Smith* action complaint).[5] According to the allegations of count one of the complaint in the present case,

---

[5] The plaintiff's complaint in the present action alleges in relevant part:

"8. In [the *Smith* action], [the plaintiff] set forth the following factual allegations:

"a. As . . . Smith approached the aforementioned intersection, he failed to stop or slow his vehicle, and collided with [the plaintiff's] vehicle as she proceeded through the intersection, causing the harms and losses set forth below;

"b. Said collision and the resulting injuries, damages and losses sustained by [the plaintiff] were directly and proximately caused by . . . Smith's negligence and/or carelessness in that he:

"1. violated [General Statutes] § 14-301 by failing to stop his vehicle at the intersection;

"2. violated [General Statutes] § 14-301 by failing to yield the right of way to [the plaintiff];

"3. failed to keep the motor vehicle he was operating under reasonable and proper control;

"4. failed to keep a proper and reasonable lookout for other motor vehicles upon the road;

"5. failed to apply the brakes of the motor vehicle he was operating in time to avoid a collision, although by a proper and reasonable exercise of his faculties, he could have and should have done so;

"6. failed to turn the motor vehicle he was operating to the right or left so as to avoid a collision, although by a proper and reasonable exercise of his faculties, he could have and should have done so;

"c. As a direct and proximate result of said collision, caused by . . . Smith's negligence and/or carelessness, [the plaintiff] suffered physical injuries, some, or all of which are likely to be permanent in nature, including

the defendant refused to admit these allegations in the *Smith* action without probable cause and "with a malicious intent to unjustly vex and trouble [the plaintiff] and to force her to incur increased litigation costs."

Count one further alleges that the defendant amended its answer in the *Smith* action yet again on December 15, 2016, this time admitting the allegation in paragraph seven of the amended complaint in the *Smith* action that "the accident was caused by . . . Smith's failure to keep a proper and reasonable lookout for other motor vehicles upon the roadway" and removing the special defense of contributory negligence. In that amended

the following:

"1. injury to the cervical spine including bulging discs at C5-6 and C6-7 with nerve root impingement and radicular symptoms;

"2. right forearm injury;

"3. headaches;

"4. shock and trauma to the entire nervous system;

"5. permanent partial disability;

"d. As a further direct and proximate result of . . . Smith's negligence and/or carelessness, [the plaintiff] was forced to expend sums for doctors, X-rays, medicines, diagnostic testing, extensive physical therapy and medical care and treatment, and will be caused to expend further such sums in the future;

"e. As a further direct and proximate result of . . . Smith's negligence and/or carelessness, [the plaintiff] was forced to miss time from work and lose wages, and may miss further time from work in the future, to her financial detriment;

"f. As a further direct and proximate result of the negligence and/or carelessness of . . . Smith, [the plaintiff] has been permanently impaired in her ability to pursue and enjoy life's activities and pleasure, including suffering emotional distress;

"g. At the time of the above-described accident, the other involved operator . . . Smith, was underinsured within the meaning of the law of the state of Connecticut and the contract of insurance between [the plaintiff] and the defendant . . .

"h. [The plaintiff] has complied with her duties under the insurance contract between herself and the defendant . . . and

"i. The defendant . . . is liable to [the plaintiff] pursuant to the terms of the above-mentioned insurance contract for damages resulting from the bodily injury sustained by [the plaintiff] which were not compensated for by the other involved operator's insurance coverage."

answer, the defendant also admitted certain allegations in paragraphs 3 and 5 of the amended complaint concerning the location and direction of travel of the vehicles driven by the plaintiff and Smith on the day of the collision, as well as the allegation in paragraph 16, stating: "As to the allegations in paragraph 16, the defendant admits that the plaintiff has complied with her duties to date but the policy requires the plaintiff to comply with continuing duties and obligations." That amended answer, however, continued to assert that the defendant lacked sufficient information to admit or deny the remaining allegations outlined in the previous paragraph. Thereafter, on April 12, 2017, the plaintiff filed a second amended complaint in the *Smith* action in which she withdrew count one against Smith and added counts for breach of the implied covenant of good faith and fair dealing, negligent infliction of emotional distress, and a violation of CUTPA based on a violation of CUIPA. Count two of the second amended complaint in the *Smith* action, the breach of contract count against the defendant, remained the same.

On June 14, 2017, the defendant filed an answer to the second amended complaint in the *Smith* action, this time changing its answers to certain allegations in count two from being without sufficient information to admit or deny the allegation to denials. For example, in its June 14, 2017 answer, the defendant denied the allegation in paragraph 7 that the collision was caused by Smith's negligence, even though, in its December 15, 2016 amended answer, it admitted that "the accident was caused by . . . [Smith's] failure to keep a proper and reasonable lookout . . . ." The defendant also denied allegations that Smith had failed to stop at a stop sign and collided with the plaintiff's vehicle as it proceeded through the intersection, that Smith was underinsured and that the plaintiff had complied with

her duties under her insurance contract with the defendant, even though in its previous answer it admitted that the plaintiff had complied with her duties as of that date.[6]

In count one of the complaint in the present case, the plaintiff also alleges that, in the *Smith* action, the defendant "asserted a special defense claiming that [the plaintiff's] injuries were caused by her own negligence, although its own investigation concluded that . . . Smith was '100 [percent] liab[le]' for the accident, noting that 'witnesses confirm' the events and that vehicle photographs were 'very damning' of . . . Smith's responsibility for the accident." The plaintiff further alleges that the defendant asserted its special defense without probable cause to do so and "with a malicious intent to unjustly vex and trouble [the plaintiff] and to force her to incur increased litigation costs." Finally, in count one the plaintiff alleges that the prior proceeding terminated in her favor and that the "defendant's prosecution of false pleadings that lacked probable cause . . . was done with malicious intent and caused [her] to suffer . . . damages . . . ."

Count two of the complaint in the present case alleges a claim for statutory vexatious litigation without malice pursuant to General Statutes § 52-568 (1), and count three alleges a claim for statutory vexatious litigation with malice pursuant to § 52-568 (2).[7] The substantive

___

[6] The record shows that, on December 27, 2017, the plaintiff served the defendant with a request for admissions. The defendant responded on January 25, 2018, admitting allegations that "[t]he September 27, 2014 motor vehicle collision . . . was directly and proximately caused by . . . Smith's negligence, in that he . . . fail[ed] to stop his vehicle at the intersection"; "[t]he subject collision was directly and proximately caused by . . . Smith's negligence, in that he . . . fail[ed] to yield the right-of-way to [the plaintiff]; and "[a]s a direct and proximate result of . . . Smith's negligence in the subject collision, [the plaintiff] suffered 'bodily injury' as defined by her auto insurance policy with [the defendant] . . . ."

[7] General Statutes § 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint

allegations in these counts parallel those of count one, with the exception of the allegations of malice, which are absent from count two. Counts four and five allege violations of CUTPA based on violations of CUIPA.

In September, 2020, the defendant filed a motion for summary judgment as to all counts of the complaint, arguing that there was no genuine issue of material fact as to any of the plaintiff's claims. In its memorandum of law in support of its motion, the defendant argued that, (1) even though counts one through three purport to allege claims for vexatious litigation, they are "nothing more than a regurgitation of the claims that have previously been dismissed," for which the defendant is entitled to absolute immunity under the litigation privilege; (2) because the plaintiff is "rehashing her claim that the pleadings of counsel were improper . . . [a]ny such claim is barred by the doctrine of res judicata"; (3) the vexatious litigation claims are unfounded because the defendant had probable cause for its pleadings in the *Smith* action and there was no malice on its part; (4) it relied on counsel to prepare its answers in the *Smith* action; and (5) the CUTPA/CUIPA claims were barred by absolute immunity under the litigation privilege, as determined previously by our Supreme Court. In support of its motion for summary judgment, the defendant submitted an affidavit from Michael DeStefano, a complex claim resolution specialist for the defendant, as well as portions of the transcript of DeStefano's deposition testimony, which deposition was taken in connection with the *Smith* action.[8] In response to the

---

commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

[8] We note that DeStefano's affidavit references exhibits that were not filed with the affidavit in the present case. Those exhibits include a letter of representation in the *Smith* action from the plaintiff's attorney, indicating that the plaintiff's claim likely would exceed the $50,000 limit of Smith's policy and that her attorney had demanded the full amount of Smith's policy, along with affidavits of no excess insurance; an affidavit from Smith in

defendant's motion for summary judgment, the plaintiff filed an objection and supporting memorandum of law, along with an affidavit from her attorney, Leonard M. Isaac.

In a memorandum of decision dated March 7, 2022, the court granted the defendant's motion for summary judgment as to all counts.[9] In doing so, the court concluded that the defendant's pleadings in the *Smith* *a*ction "were filed with probable cause."[10] In light of its

which he attested that he was involved in the motor vehicle accident with the plaintiff and had no other applicable automobile insurance; the defendant's file notes concerning the plaintiff's claim for underinsured motorist benefits, which indicate that the plaintiff had complied with her duties under the insurance contract, the plaintiff's claimed injuries, that Smith was "100 [percent] liable for failure to obey [a] . . . stop sign" and that "there was nothing [the plaintiff] could have done to avoid this loss"; and the defendant's supplemental responses to the plaintiff's discovery requests in the *Smith* action, in which the defendant corrected a prior mistaken response and indicated the name of a witness who had provided a recorded statement. Those exhibits, which have not been filed in the present action, previously were filed in the *Smith* action. Although the trial court in the present case took judicial notice of the *Smith* action for the purpose of setting forth the factual history of the present case, which stems from the *Smith* action; see footnote 9 of this opinion; the court gave no indication that it took these exhibits from the *Smith* action into consideration in deciding the present motion for summary judgment. Nevertheless, even if we consider these exhibits as evidence submitted by the defendant in support of its motion for summary judgment, they fail to demonstrate the absence of any genuine issue of material fact relating to the issue of probable cause and, in fact, tend to support the plaintiff's allegations.

[9] Judge Cesar A. Noble presided over the present action and the *Smith* action. In his memorandum of decision granting the defendant's motion for summary judgment in the present case, he stated that the facts set forth in his decision were "derived from the affidavit of . . . DeStefano, a complex claim resolution specialist employed by [the defendant] familiar with the claim and the court's judicial notice of this file and the . . . file [in the *Smith* action]." "There is no question that the trial court may take judicial notice of the file in another case . . . ." (Internal quotation marks omitted.) *Jewett* v. *Jewett*, 265 Conn. 669, 678 n.7, 830 A.2d 193 (2003). Neither party has taken issue with the court taking judicial notice of the file in the *Smith* action for the purpose of setting forth the undisputed factual history of this case.

[10] Specifically, the court stated: "In the present case, as argued by [the defendant], 'it was necessary to fully substantiate facts and information

determination regarding probable cause, the court did not address the defendant's other arguments. With respect to the plaintiff's claim that she was deprived of the opportunity to conduct discovery, the court took judicial notice of an entry in the *Smith* action "in which [the defendant] asserted, without contest, that four depositions of [the defendant's] personnel, with attendant requests for production had been taken. The depositions took over twenty hours. The court rejects this argument." The court rendered summary judgment in the defendant's favor, and this appeal followed. Additional facts and procedural history will be set forth as necessary.

We first set forth our well established standard of review of a court's decision granting a motion for summary judgment. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact . . . . [T]he party moving for summary judgment is held to a strict standard. [The moving party] must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . A material fact is a fact that will make a difference in the result of the case. . . . Because the court's decision on a motion

through the course of discovery and, as that was done, the complaint was amended to address what had been substantiated. Given the intrinsic uncertainty of the nature of a claim of injuries proximately caused by another's negligence, [the defendant] had probable cause to answer the complaint in the manner in which it did."

for summary judgment is a legal determination, our review on appeal is plenary." (Internal quotation marks omitted.) *Barbara* v. *Colonial Surety Co.*, 221 Conn. App. 337, 357–58, 301 A.3d 535, cert. denied sub nom. *Colonial Surety Co.* v. *Phoenix Contracting Group*, 348 Conn. 924, 304 A.3d 443 (2023). "[I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . .

"It is frequently stated in Connecticut's case law that, pursuant to Practice Book §§ 17-45 and 17-46, a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . .

"An important exception exists, however, to the general rule that a party opposing summary judgment must provide evidentiary support for its opposition . . . . On a motion by [the] defendant for summary judgment, the burden is on [the] defendant to negate each claim as framed by the complaint . . . . It necessarily follows that it is only [o]nce [the] defendant's burden in establishing [its] entitlement to summary judgment is met [that] the burden shifts to [the] plaintiff to show that a genuine issue of fact exists justifying a trial. . . . Accordingly, [w]hen documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue." (Citation omitted; internal quotation marks omitted.) *Gibilisco* v. *Tilcon*

*Connecticut, Inc.*, 203 Conn. App. 845, 858–59, 251 A.3d 994, cert. denied, 336 Conn. 947, 251 A.3d 77 (2021).

## I

Before we address the plaintiff's claims on appeal, we first must address a claim raised by the defendant in its appellate brief. Specifically, the defendant claims that the plaintiff's remedy for an "untrue or unfounded allegation in a pleading is [General Statutes] § 52-99[11] and Practice Book § 10-5,[12] not an action for vexatious litigation." (Footnotes added.) In making this claim, the defendant asserts that an action for vexatious litigation cannot be based on allegedly false answers to a complaint in a prior action. The defendant's claim does not relate to the portions of the vexatious litigation counts based on the defendant's special defense of contributory negligence in the *Smith* action, as the defendant acknowledges that "[t]he essence of vexatious litigation is that . . . a defendant should not assert a defense to an action without probable cause." (Emphasis omitted.) Because the defendant does not argue that a vexatious litigation action cannot be premised on a special defense filed in a prior action without probable cause, we limit our discussion to the question of whether such an action can be based on allegedly false answers to a complaint in a prior action, which has never previously

[11] General Statutes § 52-99 provides: "Any allegation or denial made without reasonable cause and found untrue shall subject the party pleading the same to the payment of such reasonable expenses, to be taxed by the court, as may have been necessarily incurred by the other party by reason of such untrue pleading; provided no expenses for counsel fees shall be taxed exceeding five hundred dollars for any one offense."

Although § 52-99 was amended by No. 22-26, § 43, of the 2022 Public Acts, that amendment has no bearing on this appeal. For simplicity, we refer to the current revision of the statute.

[12] Practice Book § 10-5 provides in relevant part: "Any allegation or denial made without reasonable cause and found untrue shall subject the party pleading the same to the payment of such reasonable expenses, to be taxed by the judicial authority, as may have been necessarily incurred by the other party by reason of such untrue pleading . . . ."

been addressed by the appellate courts of this state.[13] We address this claim first because, if the allegations in the vexatious litigation counts pertaining to the defendant's alleged conduct in filing false answers in

---

[13] Although the defendant never raised this as a ground in support of its motion for summary judgment, after the parties filed their memoranda of law in support of and in opposition to the motion for summary judgment and the trial court heard argument on the motion, the court ordered the parties to file supplemental memoranda pertaining to the following issues: (1) "Does the common-law tort of vexatious litigation require the alleged tortfeasor to have commenced an action or may a defendant be liable by virtue of his or her denial of facts alleged in a prior action?" (2) "Does the denial of facts alleged in a prior action fall within the ambit of liability for one who 'asserts a defense to any civil action' as provided in General Statutes § 52-568?" And (3) "Does the denial of the factual allegations of a paragraph of a complaint, signifying an intention 'to controvert' the allegations; see [Practice Book] § 10-46; constitute grounds for vexatious litigation?" Both parties complied with the court's order. Nevertheless, the trial court never addressed this issue in its decision granting the motion for summary judgment, which rested on its probable cause finding. Following oral argument before this court, we issued an order for the parties to file supplemental appellate briefs on this issue as well, and the parties have so complied. As a general rule, "Connecticut appellate courts will not address issues not decided by the trial court. . . . *Bayview Loan Servicing, LLC* v. *Gallant*, 209 Conn. App. 185, 197 n.7, 268 A.3d 119 (2021). [B]ecause our review is limited to matters in the record, we . . . will not address issues not decided by the trial court. . . . [O]nly in [the] most exceptional circumstances can and will [an appellate court] consider a claim, constitutional or otherwise, that has not been raised *and decided* in the trial court. . . . *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 142, 84 A.3d 840 (2014)." (Citation omitted; emphasis in original; internal quotation marks omitted.) In *Blumberg Associates Worldwide, Inc.*, our Supreme Court explained that, "unless all parties agree to review of the unpreserved claim or the party raising the claim cannot prevail, the reviewing court should provide specific reasons, based on the exceptional circumstances of the case, to justify a deviation from the general rule that unpreserved claims will not be reviewed." *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 160–61. In the present case, as we stated, we ordered the parties to file supplemental briefs on this issue, and neither party has objected to our consideration of it in deciding this appeal. Moreover, our review in this appeal from the granting of a motion for summary judgment is plenary, this issue involves a question of law, the party raising the claim cannot prevail, and we provided the parties with a meaningful opportunity to address the issue. For those reasons, we proceed to make a determination with respect to this issue without setting forth any exceptional circumstances warranting our review. See *State* v. *Russo*, 221 Conn. App. 729, 755–56, 303 A.3d 279 (2023), cert. denied, 348 Conn. 938, 307 A.3d 273 (2024).

the *Smith* action do not properly set forth a cause of action for vexatious litigation, we need not determine whether the court's finding of probable cause related thereto was proper. "This claim requires us to interpret the plaintiff's pleadings, which is a question of law subject to plenary review." *Alpha Beta Capital Partners, L.P.* v. *Pursuit Investment Management, LLC*, 193 Conn. App. 381, 419, 219 A.3d 801 (2019), cert. denied, 334 Conn. 911, 221 A.3d 446 (2020), and cert. denied, 334 Conn. 911, 221 A.3d 446 (2020).

A

We first address this issue with respect to the common-law vexatious litigation claim in count one of the complaint. In her supplemental brief to this court, the plaintiff makes a number of arguments in support of her assertion that a common-law vexatious litigation claim can be premised on a party's answer to a complaint. First, she points to the language in our Supreme Court's decision in the prior appeal in this matter, in which the court stated that "the plaintiff could have brought a lawsuit for vexatious litigation." *Dorfman* v. *Smith*, supra, 342 Conn. 612. Second, she relies on the language of the Restatement (Second) of Torts, § 674, in support of her claim that a party who contributes materially to and prolongs or continues litigation without probable cause can be liable for vexatious litigation. See 3 Restatement (Second), Torts § 674, p. 452 (1977). According to the plaintiff, "[a] defendant unnecessarily prolongs litigation by filing an answer in which it denies allegations known to be true, and/or asserts affirmative defenses or counterclaims that lack any basis in fact." In its supplemental brief, the defendant counters that "none of the reported cases hold[s] that mere allegations in a pleading can form the basis of such an action," and that the plaintiff's remedy for untrue pleadings is § 52-99 and Practice Book § 10-5, not a vexatious litigation action. Neither party has directed this court to

Connecticut case law squarely on point with the issue, either in support of or against it, nor has our research revealed any such case.[14]

In answering this question, we must determine (1) whether Connecticut follows § 674 of the Restatement (Second) of Torts, and permits a cause of action for common-law vexatious litigation for a party's conduct in continuing litigation without probable cause,[15] (2) if

[14] Our research has uncovered one Superior Court decision that involved claims for statutory vexatious litigation premised on a party's answer and special defenses filed in a prior action. In *Silano* v. *Verespy*, Superior Court, judicial district of Fairfield, Docket No. CV-18-6072543-S (April 30, 2019) (68 Conn. L. Rptr. 436, 436), the court, *Bellis, J.*, denied a motion to strike various counts of a complaint alleging claims for statutory vexatious litigation. Specifically, the "action stem[med] from the alleged vexatious litigation by the defendant . . . through which the defendant allegedly engaged in statutory vexatious litigation . . . in a prior action against the plaintiff . . . when he filed his answer and special defenses and his motion for summary judgment." Id. As to the vexatious litigation counts based on the answer and special defenses, the defendant sought to strike those counts on the basis of the doctrine of res judicata, which the court determined was not properly raised by way of a motion to strike. Id., 438. The court in *Silano*, therefore, never addressed the issue before us in this appeal.

[15] We disagree with the concurring and dissenting opinion's conclusion that, by addressing and answering this question, we are violating *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 160–61, 84 A.3d 840 (2014), because, according to the concurring and dissenting opinion, the defendant was not given notice of the issue and an opportunity to be heard thereon. The plaintiff relied on § 674 of the Restatement (Second) of Torts and the continuation theory set forth therein in raising that claim in her supplemental brief to this court, *and* she did so as well in her supplemental brief to the trial court, which put the defendant on notice that such a claim was being raised. Moreover, "[a]lthough the Restatement (Second) of Torts is not binding precedent, our appellate courts have frequently looked to it in outlining the contours of tort law in this state." (Internal quotation marks omitted.) *Kenneson* v. *Eggert*, 176 Conn. App. 296, 308 n.4, 170 A.3d 14 (2017); see also *Allen* v. *Cox*, 285 Conn. 603, 613, 942 A.2d 296 (2008); *Pestey* v. *Cushman*, 259 Conn. 345, 358, 788 A.2d 496 (2002); *Clohessy* v. *Bachelor*, 237 Conn. 31, 38–39, 46, 675 A.2d 852 (1996); *Northeast Building Supply, LLC* v. *Morrill*, 224 Conn. App. 137, 150, 312 A.3d 138 (2024); *Reiner* v. *Reiner*, 214 Conn. App. 63, 73, 279 A.3d 788 (2022); *Kumah* v. *Brown*, 130 Conn. App. 343, 352 and n.4, 23 A.3d 758 (2011); *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 654, 867 A.2d 860, cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005). Indeed, as this court recently

so, what type of conduct constitutes a "continuation" of civil proceedings, (3) whether the allegations of the complaint properly assert a cause of action for vexatious litigation with respect to the defendant's alleged bad faith pleading in its answers in the *Smith* action, and (4) whether § 52-99 and Practice Book § 10-5 are a party's exclusive remedy for untrue pleadings. We address these questions in turn.

1

Our determination of whether Connecticut follows § 674 of the Restatement (Second) of Torts must be made with due regard for our well established case law concerning vexatious litigation. "In Connecticut, the cause of action for vexatious litigation exists both at common law and pursuant to statute. . . . [T]o establish a claim for vexatious litigation at common law, one must prove want of probable cause, malice and a

has stated, "in defining the parameters of a vexatious litigation claim in Connecticut, our Supreme Court has often looked to the Restatement (Second) of Torts, which describes, among other things, torts relating to unjustifiable litigation, including the torts of malicious prosecution, wrongful use of civil proceedings, and abuse of process. See 3 Restatement (Second), [supra, §§ 653 through 682, pp. 406–75]; see also *DeLaurentis* v. *New Haven*, [220 Conn. 225, 256, 597 A.2d 807 (1991)]; *Blake* v. *Levy*, [191 Conn. 257, 264, 464 A.2d 52 (1983)]." (Footnote omitted.) *Northeast Building Supply, LLC* v. *Morrill*, supra, 150. Finally, we gave the defendant a meaningful opportunity to provide a supplemental brief concerning the issue of "whether an action for vexatious litigation can be premised on a party's answer to a complaint in a prior action." The fact that the defendant, in answering that question, did not cite to the Restatement (Second) does not preclude this court from looking to that resource for guidance on the issue, as the Restatements of the law "seek to compile and distill the common law that exists"; *Schwerin* v. *Ratcliffe*, 335 Conn. 300, 326, 238 A.3d 1 (2020); and are not the law. See *Reiner* v. *Reiner*, supra, 76 n.11; see also *Doe* v. *Saint Francis Hospital & Medical Center*, 309 Conn. 146, 179 n.26, 72 A.3d 929 (2013) (even though parties made only passing reference to several Restatement provisions and did not rely expressly on § 302B of Restatement (Second) of Torts, court relied on § 302B because its underlying principles informed arguments parties made on appeal and accurately reflected state of law on issues in case).

termination of suit in the plaintiff's favor. . . . The statutory cause of action for vexatious litigation exists under . . . § 52-568, and differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages." (Internal quotation marks omitted.) *Elwell* v. *Kellogg*, 220 Conn. App. 822, 835, 299 A.3d 1166, cert. denied, 348 Conn. 927, 304 A.3d 861 (2023); see also *Forsstrom* v. *Smanik*, Superior Court, judicial district of Windham, Docket No. CV-12-6005759-S (November 20, 2014) ("The term 'vexatious litigation' applies to such behavior on the part of a plaintiff in the first suit, as well as to such conduct on the part of a prior defendant—although, as to defendants, the unacceptable conduct is sometimes referred to as 'vexatious defense.' Suits against those who were plaintiffs in the first instance appear to outnumber those against former defendants by some order of magnitude, and few of the latter have yielded lengthy decisions; it is undisputed, nevertheless, that the two categories are mirror images of each other and analytically indistinguishable . . . ." (Citation omitted.)).

"A vexatious suit is a type of malicious prosecution action, differing principally in that it is based upon a prior civil action, whereas a malicious prosecution suit ordinarily implies a prior criminal complaint."[16] (Internal quotation marks omitted.) *Falls Church Group, Ltd.*

---

[16] This court recently has noted "that many states, unlike Connecticut, refer to vexatious litigation claims in the civil context as 'malicious prosecution' claims. See, e.g., *Chervin* v. *Travelers Ins. Co.*, 448 Mass. 95, 102–103, 858 N.E.2d 746 (2006) ('[t]he tort [of malicious prosecution] is not confined to the wrongful initiation of criminal proceedings; it may be maintained for the unjustifiable initiation of a civil action' . . .)); *Burt* v. *Smith*, 181 N.Y. 1, 5, 73 N.E. 495 (1905) ('[a]n action for malicious prosecution is usually based upon an arrest in criminal proceedings, although it may be founded upon a civil action when commenced simply to harass and oppress the defendant'), appeal dismissed, 203 U.S. 129, 27 S. Ct. 37, 51 L. Ed. 121 (1906); *Ims* v. *Portsmouth*, 32 A.3d 914, 922 (R.I. 2011) (defining malicious prosecution 'as a suit for damages resulting from a prior criminal or civil legal proceeding that was instituted maliciously and without probable cause, and that terminated unsuccessfully for the plaintiff therein' . . .))." *North-*

v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94, 912 A.2d 1019 (2007). "[T]he purpose of [an] action [for vexatious litigation] is to compensate a wronged individual for damage to his reputation and to reimburse him for the expense of defending against the unwarranted action. . . . *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 286 Conn. 548, 554, 944 A.2d 329 (2008)." (Internal quotation marks omitted.) *Kazemi* v. *Allen*, 214 Conn. App. 86, 104, 279 A.3d 742 (2022), cert. denied, 345 Conn. 971, 286 A.3d 906 (2023). "Permitting recovery in a suit for vexatious litigation promotes the 'interest in making the courts available for the resolution of disputes while discouraging the use of litigation simply as a means to harm others.' Simply put, liability for vexatious litigation aims to penalize litigants and attorneys who file or defend baseless claims solely with the intention to frustrate the opposing party, monetarily or otherwise." (Footnote omitted.) S. Gruber, "A Lawyer's Guide to Vexatious Litigation in Connecticut," 88 Conn. B.J. 184, 187 (2015).

Pursuant to § 674 of the Restatement (Second) of Torts, "[o]ne who takes an active part in the initiation, *continuation* or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if (a) he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based . . . ."[17] (Emphasis added.) 3 Restatement (Second), supra, p. 452. As comment (c) to § 674 of the Restatement explains, "one who continues a civil proceeding that has properly been begun or one who takes an active part in its continuation

---

east *Building Supply, LLC* v. *Morrill*, 224 Conn. App. 137, 154 n.9, 312 A.3d 138 (2024).

[17] The elements of a claim for wrongful use of civil proceedings under § 674 of the Restatement (Second) of Torts are similar to those of the tort of vexatious litigation. See *Northeast Building Supply, LLC* v. *Morrill*, 224 Conn. App. 137, 150 n.7, 312 A.3d 138 (2024).

for an improper purpose after he has learned that there is no probable cause for the proceeding becomes liable as if he had then initiated the proceeding." Id., comment (c), p. 453. For purposes of this opinion, we refer to this as the continuation theory.[18]

[18] Notably, the continuation theory is not a novel one; in fact, a vast majority of American jurisdictions have recognized and adopted it in the context of claims for the malicious prosecution of a prior civil action, malicious abuse of process, and wrongful use of civil proceedings. See *Poff* v. *Hayes*, 763 So. 2d 234, 241 (Ala. 2000); *Greywolf* v. *Carroll*, 151 P.3d 1234, 1241 (Alaska 2007); *McClinton* v. *Rice*, 76 Ariz. 358, 367, 265 P.2d 425 (1953); *Sundeen* v. *Kroger*, 355 Ark. 138, 142, 133 S.W.3d 393 (2003); *Zamos* v. *Stroud*, 32 Cal. 4th 958, 966, 87 P.3d 802, 12 Cal. Rptr. 3d 54 (2004); *Slee* v. *Simpson*, 91 Colo. 461, 465, 15 P.2d 1084 (1932); *Salazar* v. *Public Trust Institute*, 522 P.3d 242, 249 (Colo. App. 2022); *Debrincat* v. *Fischer*, 217 So. 3d 68, 70 (Fla. 2017); *Horne* v. *J.H. Harvey Co.*, 274 Ga. App. 444, 448, 617 S.E.2d 648 (2005); *Arquette* v. *State*, 128 Haw. 423, 431–33, 290 P.3d 493 (2012); *Badell* v. *Beeks*, 115 Idaho 101, 102–104, 765 P.2d 126 (1988); *Dawson* v. *Mead*, 98 Idaho 1, 5, 557 P.2d 595 (1976); *Beaman* v. *Freesmeyer*, 131 N.E.3d 488, 497–98 (Ill. 2019); *Liberty Loan Corp. of Des Moines* v. *Williams*, 201 N.W.2d 462, 466 (Iowa 1972); *Lindenman* v. *Umscheid*, 255 Kan. 610, 624, 875 P.2d 964 (1994); *Lemoine* v. *Wolfe*, 168 So. 3d 362, 367 (La. 2015); *Friedman* v. *Dozorc*, 412 Mich. 1, 34, 312 N.W.2d 585 (1981); *Alpha Gulf Coast, Inc.* v. *Jackson*, 801 So. 2d 709, 721 (Miss. 2001); *Palisades Collection, LLC* v. *Watson*, 375 S.W.3d 857, 861 (Mo. App. 2012); *Farmers Ins. Exchange* v. *Minemyer*, 413 Mont. 60, 75, 532 P.3d 837 (2023); *McKinney* v. *Okoye*, 287 Neb. 261, 271–72, 842 N.W.2d 581 (2014); *O'Brien* v. *Behles*, 464 P.3d 1097, 1110–12 (N.M. 2020); *Cold Spring Advisory Group, LLC* v. *National Securities Corp.*, 226 App. Div. 3d 612, 612, 210 N.Y.S.3d 393 (2024); *Siegel* v. *O.M. Scott & Sons Co.*, 73 Ohio App. 347, 351, 56 N.E.2d 345 (1943); *Empire Oil & Refinery Co.* v. *Williams*, 184 Okla. 172, 173, 86 P.2d 291 (1938); *Checkley* v. *Boyd*, 170 Or. App. 721, 734–36, 14 P.3d 81 (2000), review denied, 332 Or. 239, 28 P.3d 1174 (2001); *Coatesville* v. *Jarvis*, 902 A.2d 1249, 1251 (Pa. Super.), appeal denied, 591 Pa. 688, 917 A.2d 844 (2006); *Brough* v. *Foley*, 572 A.2d 63, 66 (R.I. 1990); *Pallares* v. *Seinar*, 407 S.C. 359, 366, 756 S.E.2d 128 (2014); *Heib* v. *Lehrkamp*, 704 N.W.2d 875, 884 n.8 (S.D. 2005); *Cordova* v. *Martin*, 677 S.W.3d 654, 659 (Tenn. App. 2023), appeal denied, Tennessee Supreme Court, Docket No. M2021-0142-SC-R11-CV (October 11, 2023); *Texas Beef Cattle Co.* v. *Green*, 921 S.W.2d 203, 207 (Tex. 1996); *Nielson* v. *Spencer*, 196 P.3d 616, 620–21 (Utah 2008), cert. denied, 207 P.3d 432 (Utah 2009); *Bacon* v. *Reimer & Braunstein, LLP*, 182 Vt. 553, 554, 929 A.2d 723 (2007); *Loeffelholz* v. *Citizens for Leaders with Ethics & Accountability Now*, 119 Wn. App. 665, 695, 82 P.3d 1199, review denied, 152 Wn. 2d 1023, 101 P.3d 107 (2004); *Strid* v. *Converse*, 111 Wis. 2d 418, 423, 331 N.W.2d 350 (1983); *Cates* v. *Eddy*, 669 P.2d 912, 917 (Wyo. 1983).

In *DeLaurentis* v. *New Haven*, 220 Conn. 225, 248, 597 A.2d 807 (1991), our Supreme Court stated: "Most courts now agree with the Restatement (Second) of Torts, § 680, which permits liability for vexatious 'initiation, *continuation* or procurement of civil proceedings against another before an administrative board that has power to take action adversely affecting the legally protected interests of the other.' " (Emphasis added.) Id.; see 3 Restatement (Second), supra, § 680, p. 468. Although the court in *DeLaurentis* expressed agreement with § 680 of the Restatement (Second) of Torts in recognizing that a vexatious litigation action may be based on a prior administrative, rather than civil, proceeding that terminated in the plaintiff's favor; see *Rioux* v. *Barry*, 283 Conn. 338, 347, 927 A.2d 304 (2007); § 680 includes the identical "initiation, continuation or procurement of civil proceedings" language set forth in § 674 of the Restatement, which is not limited to administrative proceedings.[19] We cannot think of any

---

[19] Our Superior Courts have construed our Supreme Court's reference in *DeLaurentis* to the continuation language in § 680 of the Restatement (Second) for administrative proceedings as a statement of its agreement with and adoption of the continuation theory for purposes of the tort of vexatious litigation, whether in an administrative or a civil proceeding. See *Diamond 67, LLC* v. *Oatis*, Superior Court, judicial district of Hartford, Complex Litigation Docket, Docket No. CV-12-6030610-S (September 18, 2017) (citing *DeLaurentis* and its application of § 680 of Restatement (Second) of Torts, and holding that "continuation of civil proceedings is sufficient to support a vexatious litigation claim" based on defendants' intervention in mandamus action and administrative appeal); *Infante* v. *Zurich American Ins. Co.*, Docket No. CV-94-327422-S, 1998 WL 310871, *4 (Conn. Super. June 1, 1998) (citing § 674 of Restatement (Second) of Torts for proposition that vexatious suit action "also applies to wrongful continuation of a lawsuit" and holding that question of material fact existed as to whether defendant wrongfully continued civil proceeding); *Levine* v. *Fairfield Fire Dept.*, Superior Court, judicial district of Fairfield, Docket No. CV-89-0255827-S (December 17, 1993) (10 Conn. L. Rptr. 556, 556–57) (explaining that *DeLaurentis* "recognized that a claim of vexatious suit or malicious prosecution was not limited to a prior civil action or prior criminal complaint, but that it extends to an initiation, continuation or procurement of civil proceedings"); *Paul Rebeschi Construction, Inc.* v. *Yates*, Superior Court, judicial district of New Haven, Docket No. 307901 (August 19, 1991) (4 Conn. L. Rptr. 430, 430)

reason why our Supreme Court, having acknowledged its agreement with this theory for vexatious litigation claims based on prior administrative proceedings, would not do so in the context of such claims based on prior civil proceedings. See *Northeast Building Supply, LLC* v. *Morrill*, 224 Conn. App. 137, 150, 312 A.3d 138 (2024) ("in defining the parameters of a vexatious litigation claim in Connecticut, our Supreme Court has often looked to the Restatement (Second) of Torts"); see also *Blake* v. *Levy*, 191 Conn. 257, 264, 464 A.2d 52 (1983) (referring to comment (j) of § 674 of Restatement (Second) of Torts regarding requirement of vexatious litigation claim that plaintiff allege that prior litigation terminated in plaintiff's favor and purpose that requirement serves).

Moreover, Connecticut case law suggests that this court implicitly has expressed agreement with § 674 of the Restatement (Second) of Torts and/or the continuation theory as a proper basis for an action for vexatious litigation. For example, this court previously applied the continuation theory set forth in § 680 of the Restatement (Second) of Torts in *Diamond 67, LLC* v. *Oatis*, 167 Conn. App. 659, 144 A.3d 1055, cert. denied, 323 Conn. 926, 150 A.3d 230 (2016), and cert. denied, 323 Conn. 927, 150 A.3d 228 (2016), and cert. denied, 323 Conn. 927, 150 A.3d 228 (2016), and cert. denied, 323 Conn. 927, 150 A.3d 229 (2016), and cert. denied, 323 Conn. 927, 150 A.3d 230 (2016). In *Diamond 67, LLC*, the plaintiff commenced an action against the defendants for common-law and statutory vexatious litigation premised on the defendants' conduct in intervening in certain mandamus and administrative actions, which thereby caused a delay in the plaintiff's

(holding that, although administrative proceeding was not initiated by defendants, "its continuation by their taking the appeal [was] sufficient to support" cause of action for common-law vexatious litigation).

ability to obtain certain necessary approvals for a development project. Id., 667–68. The trial court rendered summary judgment in favor of the defendants, and, on appeal, this court reversed that judgment. Id., 672, 691. After citing *DeLaurentis* and our Supreme Court's "agree[ment] with the Restatement (Second) of Torts, § 680"; (internal quotation marks omitted) id., 681; this court concluded: "Here, the plaintiff submitted evidence establishing that there is a genuine issue of material fact as to each defendant's participation in the initiation, procurement, and/or continuation of their respective interventions in the plaintiff's administrative and mandamus actions . . . ." Id., 683.

In *Schaeppi* v. *Unifund CCR Partners*, 161 Conn. App. 33, 41, 127 A.3d 304, cert. denied, 320 Conn. 909, 128 A.3d 953 (2015), the plaintiff brought an action for statutory and common-law vexatious litigation based on the defendants' alleged lack of probable cause (1) to continue to prosecute a foreclosure action after being put on notice that the amount of damages had not been determined in an underlying debt collection action; id., 52; and (2) to appeal from the denial of its motion to open the judgment in the foreclosure action. Id., 54. This court quoted the language from *DeLaurentis* that "there may be liability for vexatious 'initiation, *continuation* or procurement of civil proceedings' " in support of the notion that "[p]robable cause . . . can be lost during the course of an action." (Emphasis in original.) Id., 45 n.6. We ultimately concluded that the defendants "did not lose probable cause to pursue the foreclosure action because of adverse rulings along the way"; id., 53; and that probable cause existed to pursue the appeal. Id., 54. Similarly, in *Rousseau* v. *Weinstein*, 204 Conn. App. 833, 254 A.3d 984 (2021), the plaintiffs brought an action raising common-law and statutory vexatious litigation claims in which they "alleged that the defendants lacked probable cause to commence

and to continue [a] civil action" that contained the same allegations as those raised in a prior dissolution action, following the issuance of a decision in the dissolution action. Id., 851. The trial court rendered summary judgment in favor of the defendants, and this court, in affirming the judgment, concluded that the defendants "had probable cause to continue the civil action, move for a stay in that matter, and await the outcome of [an] appeal prior to determining how to proceed." Id., 859; see also *Infante* v. *Zurich American Ins. Co.*, Docket No. CV-94-327422-S, 1998 WL 310871, *4 (Conn. Super. June 1, 1998) (citing 3 Restatement (Second), supra, § 674, and explaining that, "[w]hile a vexatious suit action is usually brought for wrongful initiation of a civil proceeding, it also applies to wrongful continuation of a lawsuit").

Although the precise issue before us in the present case was not at issue in the cases we have cited, what we derive from this case law is that actions for vexatious litigation in Connecticut, both common-law and statutory, have been and can be based on a party's conduct in the continuation of a civil or administrative proceeding without probable cause. A vexatious litigation action must still stem from a prior civil action or administrative proceeding, and to establish such an action a party must "prove want of probable cause . . . and a termination of suit in the plaintiff's favor." (Internal quotation marks omitted.) *DeLaurentis* v. *New Haven*, supra, 220 Conn. 248. The continuation theory simply relates to a party's conduct within the prior action, whether civil or administrative in nature. Allowing a vexatious litigation action for a party's conduct in prolonging a civil proceeding without probable cause furthers one of the underlying purposes of the doctrine—to reimburse a party for litigation expenses resulting from defending against or

responding to unwarranted actions. See *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, supra, 286 Conn. 554.[20]

2

With this in mind, we necessarily must determine what constitutes a "continuation" of a legal proceeding. Pursuant to comment (c) to § 674 of the Restatement (Second) of Torts, "one who continues a civil proceeding that has properly been begun or one who takes an active part in its continuation for an improper purpose after he has learned that there is no probable cause for the proceeding becomes liable as if he had then initiated the proceeding." 3 Restatement (Second), supra, § 674, comment (c), p. 453. Merriam-Webster's Collegiate Dictionary (11th Ed. 2014) p. 270, defines continuation as "the act or fact of continuing in or the prolongation of a state or activity . . . ." Continue is defined in part as "to keep going or add to . . . prolong . . . ." Id. Therefore, one who takes an active part in the continuation of a civil proceeding engages in conduct that prolongs or keeps that proceeding going.

To that end, actions for vexatious litigation in Connecticut alleging a party's continuation of a civil proceeding for an improper purpose have been based on a myriad of ways in which the litigation has been prolonged in the prior action, including the filing of a counterclaim and the assertion of a special defense; see *Rozbicki* v. *Sconyers*, 198 Conn. App. 767, 769, 772, 234 A.3d 1061 (2020) (vexatious litigation count of complaint alleged that defendants asserted special defenses and filed counterclaim in prior action without probable cause); intervening in an action; *Diamond 67, LLC* v.

---

[20] See also *Zamos* v. *Stroud*, 32 Cal. 4th 958, 969, 87 P.3d 802, 12 Cal. Rptr. 3d 54 (2004) ("[c]ontinuing an action one discovers to be baseless harms [a party] and burdens the court system just as much as initiating an action known to be baseless from the outset").

*Oatis*, supra, 167 Conn. App. 683 (common-law and statutory vexatious litigation claims premised on defendants' intervention in mandamus and administrative actions, which caused delay in plaintiff's ability to obtain approvals for development project); filing a motion; *Duse* v. *Carter*, 9 Conn. App. 218, 219, 518 A.2d 74 (1986) (statutory vexatious litigation claim alleging that, in parties' prior marital dissolution action, defendant filed contempt motion without probable cause and "with a malicious intent to vex and trouble [the plaintiff]"); *Nutmeg Financial Holdings, LLC* v. *Bachleda*, Superior Court, judicial district of Hartford, Docket No. CV-21-6142429-S (October 12, 2022) (relying on *Schaeppi* for proposition that "[a] claim for vexatious litigation may be predicated on a complaint or a defense, but also on a motion to open a judgment and a subsequent appeal"); *Silano* v. *Verespy*, Superior Court, judicial district of Fairfield, Docket No. CV-18-6072543-S (April 30, 2019) (68 Conn. L. Rptr. 436, 438) (plaintiff alleged requisite elements for vexatious litigation claim by alleging that summary judgment motion was filed without probable cause in prior action and with malice, and that prior action terminated in plaintiff's favor); filing an appeal; see *Schaeppi* v. *Unifund CCR Partners*, supra, 161 Conn. App. 36 (vexatious litigation action alleging that defendants lacked probable cause to pursue appeal following denial of motion to open foreclosure judgment); *Woodbury-Correa* v. *Reflexite Corp.*, Superior Court, judicial district of New Britain, Docket No. CV-11-6011794 (December 15, 2014) (genuine issue of material fact existed as to whether defendant had probable cause to appeal decision of Department of Labor); *Paul Rebeschi Construction, Inc.* v. *Yates*, Superior Court, judicial district of New Haven, Docket No. 307901 (August 19, 1991) (4 Conn. L. Rptr. 430, 430) (holding that defendants' continuation of administrative proceeding by taking appeal was sufficient to support

action for vexatious litigation and citing § 674 of Restatement (Second) of Torts for support); and the filing of grievance complaints. See *Kaufman*, *LLC* v. *Feinberg*, Docket No. 3:17cv958 (AVC), 2018 WL 11391732, *4 (D. Conn. August 1, 2018) (holding that grievance complaints could serve as basis for common-law and statutory vexatious litigation claims).

3

Having discussed the types of conduct that can be considered a continuation of a civil proceeding for purposes of vexatious litigation, we next must determine whether a defendant's bad faith response in an answer to an allegation in the plaintiff's complaint, as alleged in the present case, falls within the type of conduct on which a vexatious litigation action can be premised. In light of the particular circumstances of the present case, we conclude that it does.

Black's Law Dictionary defines an answer as "[a] defendant's first pleading that addresses the merits of the case, [usually] by denying the plaintiff's allegations. . . . An answer usually sets forth the defendant's defenses and counterclaims." Black's Law Dictionary (12th Ed. 2024) p. 114. Pursuant to Practice Book § 10-46, "[t]he defendant in the answer shall specially deny such allegations of the complaint as the defendant intends to controvert, admitting the truth of the other allegations, unless the defendant intends in good faith to controvert all the allegations, in which case he or she may deny them generally." "The pleading of no knowledge or information to . . . allegations [in a complaint] is in effect a denial." (Internal quotation marks omitted.) *Second Exeter Corp.* v. *Epstein*, 5 Conn. App. 427, 429, 499 A.2d 429 (1985), cert. denied, 198 Conn. 802, 502 A.2d 932 (1986). When an action has been commenced against a defendant, the defendant must file an answer within a certain time period or it

may be subject to default for failure to plead and monetary penalties. See General Statutes § 52-119; Practice Book §§ 10-8 and 17-32; see also *Kaye* v. *Housman*, 184 Conn. App. 808, 814, 195 A.3d 1168 (2018) ("[o]ur statutes and rules of practice provide penalties for failing to comply with the timely pleading requirements of Practice Book § 10-8").

"Connecticut courts historically have imposed sanctions on parties for untruthful pleading." *Stamford Hospital* v. *Schwartz*, 190 Conn. App. 63, 86, 209 A.3d 1243, cert. denied, 332 Conn. 911, 209 A.3d 644 (2019). If "[a] plea of general denial to material allegations of the complaint that the defendant knew to be true subjects a litigant to pay expenses incurred to establish the truth" under our rules of practice; id.; we can think of no reason why it cannot also subject a litigant to an action for vexatious litigation when that litigant files an answer in which it falsely denies, or asserts that it lacks sufficient information to deny or admit, allegations it allegedly knows to be true, nor have we found any Connecticut authority precluding such an action. Good faith pleading is required in Connecticut, and although the filing of an answer is a required responsive pleading under our rules of practice, a failure to admit, or the denial in the answer of, allegations known to be true at that time could unnecessarily prolong litigation just as much as filing a motion; see *Duse* v. *Carter*, supra, 9 Conn. App. 219; or filing an appeal.[21] See *Schaeppi* v. *Unifund CCR Partners*, supra, 161 Conn. App. 36. Moreover, the requirement in our rules of practice that "all allegations [in pleadings] . . . be founded on a reasonable basis"; *Somers* v. *Chan*, 110 Conn. App. 511,

---

[21] We are not suggesting that a failure to plead could be the basis for a claim of vexatious litigation. Although failing to plead does amount to a failure to admit allegations that are not in dispute, a default for failure to plead constitutes an admission of the allegations of the complaint and therefore does not prolong the action.

535, 955 A.2d 667 (2008); makes no exception for a party's answer.[22]

The allegations in this case present the unique circumstances in which a defendant may be liable for vexatious litigation based on its responses to allegations in the complaint. First, and significantly, we must emphasize the context in which the present action arose. The plaintiff was involved in a motor vehicle accident with an underinsured tortfeasor, Smith. Immediately following the accident, the plaintiff notified the defendant, her insurer, of the accident and of a potential claim for underinsured motorist benefits under her contract of insurance with the defendant. That prompted the defendant to start a file with respect to the plaintiff's accident and to conduct a yearlong investigation into the matter that was concluded on May 26, 2015, before the plaintiff commenced the prior negligence action against Smith in September, 2015. In December, 2015, the defendant was brought into the *Smith* action, and the complaint was amended to allege a claim of breach of contract against the defendant, *not a negligence claim.* Although the plaintiff did not settle that action with Smith until January, 2016, at the time the defendant was brought into the action, the file notes in the defendant's file concerning the plaintiff's accident indicated that Smith was 100 percent liable for the accident, and

___

[22] See Practice Book § 4-2, which provides in relevant part: "(a) Every pleading and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign his or her pleadings and other papers. The name of the attorney or party who signs such document shall be legibly typed or printed beneath the signature.

"(b) The signing of any pleading, motion, objection or request shall constitute a certificate that the signer has read such document, that to the best of the signer's knowledge, information and belief there is good ground to support it, that it is not interposed for delay, and that the signer has complied with the requirements of Section 4-7 regarding personal identifying information. . . ."

the defendant did not file its first answer to the complaint until May, 2016, after Smith settled with the plaintiff.

The allegations of the complaint in the present case describe a pattern of bad faith pleading by the defendant during the course of the *Smith* action when the defendant filed not only its initial answer asserting that it lacked information to admit or deny, inter alia, the allegation that Smith was 100 percent liable for the accident, but three subsequent amended answers in which it continued to make that assertion about various allegations it allegedly knew to be true and, ultimately, denied those allegations, despite having previously admitted some of them. This occurred over a period of more than one year. These allegations addressed conduct that prolonged the *Smith* action with respect to the breach of contract count against the defendant, for which the defendant eventually admitted liability. Our jurisprudence on vexatious litigation does not preclude a party from basing a vexatious litigation action on such allegations. Indeed, to permit a plaintiff to hold a defendant accountable by way of a vexatious litigation action for such alleged conduct furthers the purpose of the tort of vexatious litigation.

The defendant and the concurring and dissenting opinion suggest that our decision will open floodgates to litigation.[23] The defendant asserts that "[t]he plaintiff

[23] See *Paul Rebeschi Construction, Inc.* v. *Yates*, supra, 4 Conn. L. Rptr. 430 ("The court is fully aware that 'honest litigants are to be encouraged to seek justice and not to be deterred by fear of an action in return and . . . that litigation must end somewhere, and that if one counter-action may be brought, so may another and another.' Prosser & Keeton on Torts § 120 (5th Ed.). However, when a party pursues a legal proceeding, without probable cause and for a purpose other than that of securing the proper adjudication of a claim, that person is not an honest litigant seeking justice and should respond to damages for the harm caused by such reckless and costly conduct.").

would have this court adopt a rule that the mere assertion of contributory negligence by defense counsel in an uninsured or underinsured motorist case can be the basis of a vexatious litigation claim against his or her client. Besides opening the door to a flood of lawsuits, such a rule would have a chilling effect on defense counsel's ability to represent the client competently . . . and to exercise independent professional judgment." (Citation omitted.) The concurring and dissenting opinion echoes these concerns, relying on case law from courts in other states where such actions are disfavored. See, e.g., *Ritter* v. *Ritter*, 381 Ill. 549, 554–55, 46 N.E.2d 41 (1943); *Pope* v. *Pollock*, 46 Ohio St. 367, 370, 21 N.E. 356 (1889); see also footnote 26 of this opinion. We are not persuaded by these arguments for a number of reasons.

First, it is clear from Connecticut case law that an action for vexatious litigation may be based on a counterclaim or special defense that was asserted in a prior action without probable cause. See *Rozbicki* v. *Sconyers*, supra, 198 Conn. App. 791 (trial court improperly granted defendant's motion for summary judgment because genuine issue of material fact existed as to whether defendant had probable cause to assert special defense). Second, the particular factual circumstances of the present case indicate that the defendant had conducted and closed a yearlong investigation into the collision, at the close of which two claims specialists for the defendant determined that Smith was 100 percent liable for the collision and indicated their liability conclusions in the claim file long before the defendant was brought into the *Smith* action. The photographs of the accident, the police report and witness statements collected during that investigation were all consistent with the conclusions of the claims specialists. Additionally, the plaintiff had settled her claim with Smith and withdrew the action against him on January 5, 2016. Significantly, this all occurred *before* the defendant filed its

answer and special defense of contributory negligence in the *Smith* action in May, 2016. Third, there are inherent safeguards in actions for vexatious litigation that "balance the need to protect against inappropriate retaliatory litigation while incentivizing the reporting of wrongdoing." *Dorfman* v. *Smith*, supra, 342 Conn. 605; see also *Scholz* v. *Epstein*, 198 Conn. App. 197, 232, 232 A.3d 1155 (2020), aff'd, 341 Conn. 1, 266 A.3d 127 (2021). In fact, there is a lower threshold for establishing probable cause in vexatious litigation cases, which is designed to permit attorneys to pursue novel legal theories, even though they may turn out to be unsuccessful. See *Kazemi* v. *Allen*, supra, 214 Conn. App. 107. Thus, a plaintiff alleging a claim of vexatious litigation will have to demonstrate that the prior civil proceeding terminated in the plaintiff's favor, a lack of probable cause, and, if the plaintiff is seeking treble damages under § 52-568 (2), a showing of malice. For these reasons and under the particular facts of the present case, we do not believe our decision today will open any floodgates to litigation or impose unreasonable pleading requirements on parties.

For similar reasons, we also conclude that the possibility that a claim for vexatious litigation can be based on a bad faith denial in an answer does not mean that the ability of defendants to hold plaintiffs to their proof will be chilled. In a claim for vexatious litigation, a lack of probable cause must be established; that is, the plaintiff must show that the defendant denied allegations that were known to be true at the time of the denial. Furthermore, because discovery in most cases is conducted *after* a party files an answer to a complaint, it typically will be difficult to establish a lack of probable cause at the time of the filing of the answer denying an allegation. The probable cause requirement, thus, acts as a formidable barrier to baseless vexatious litigation actions, as liability will attach only under narrow

circumstances. That determination is further reinforced by the fact that, in addition to lack of probable cause, a party must also establish favorable termination of the prior action and, if bringing a cause of action pursuant to § 52-568 (2), malice, all of which help to distinguish vigorous claims from malicious ones and, thus, serve to minimize any chilling effect on zealous advocacy. Moreover, in light of the "inherent safeguards against inappropriate retaliatory litigation [contained within] claims of vexatious litigation"; *Scholz* v. *Epstein*, supra, 198 Conn. App. 232; we see no merit to the concurring and dissenting opinion's contention that, as a result of our decision, "the mere denial of an allegation in a civil pleading" or "an inartfully or even negligently pleaded answer" will subject individuals to actions for vexatious litigation.

Actions for vexatious litigation have long been a part of Connecticut jurisprudence. See *Frisbie* v. *Morris*, 75 Conn. 637, 637, 55 A. 9 (1903) (explaining that "[vexatious litigation] statute (Rev. 1902, § 1105) . . . appears to have been first enacted in 1672 (Rev. of 1808, p. 671), and with some changes in phraseology has formed part of our law ever since"); *Munson* v. *Wickwire*, 21 Conn. 513, 515 (1852) (action for malicious suit); see also *Sterling* v. *Adams*, 3 Day (Conn.) 411, 432 (1809); *Nichols* v. *Bronson*, 2 Day (Conn.) 211, 216 (1805); *Deming* v. *Taylor*, 1 Day (Conn.) 285, 289–90 (1804); *Ainsworth* v. *Allen*, 1 Kirby (Conn.) 145, 146 (1786). Connecticut, unlike most states, even permits a cause of action for vexatious litigation based on the filing of a special defense without probable cause, which, in effect, is an action based on a vexatious defense. Yet, despite the critics in other states where such actions are not permitted and the concerns raised by the concurring and dissenting opinion in the present case, there is no indication that permitting such an action has caused the foundations of our courthouses to crack from the flood of lawsuits. History suggests that it also will not do so as a result of our decision today.

For these reasons, we believe that the concurring and dissenting opinion overstates the consequences of our decision and needlessly invokes "the sky is falling" rhetoric. It will be a rare case in which a party's denial of material factual allegations in a complaint will give rise to a vexatious litigation claim. Moreover, our decision will not "reverberate through every civil courthouse in this state," as suggested by the concurring and dissenting opinion, in light of the vast circumstances that Connecticut courts already have recognized as proper grounds for actions for vexatious litigation. Simply put, our decision does not constitute an unwarranted enlargement of the current law in Connecticut regarding vexatious litigation[24] but, rather, logically stems from it and the policies underlying the tort. Those policies are designed to protect the right of an individual to be free from unjustifiable litigation, which applies equally when litigation is unnecessarily prolonged by a party who abuses the process, and a party should be no less accountable for such wrongful conduct in litigation simply because it occurred in the filing of answers to a complaint, as opposed to a motion, special defense or an appeal.

[24] The concurring and dissenting opinion characterizes our decision as an expansion of the current law regarding actions for vexatious litigation and, in doing so, notes the "grave implications" resulting from the fact that the novel issue in this case "has not been thoroughly vetted by members of our profession in the form of amicus briefs or proceedings before the Rules Committee of the Superior Court or the General Assembly." These assertions notwithstanding, as we have stated, our decision does not enlarge the current law but logically flows from it. For that reason and in light of our Supreme Court's decision in *Dorfman* v. *Smith*, supra, 342 Conn. 582, we do not believe that amicus briefs are warranted in this matter.

Furthermore, like the concurring and dissenting opinion, we are mindful of the attorneys in this state who practice daily in our civil courts and we agree that general denials are commonplace. When litigation is unnecessarily prolonged by a party who files answers denying factual allegations it knows to be true, however, a civil advocate exceeds the limits of legitimate advocacy and should not be insulated from legal liability for the misuse of the litigation process, while at the same time the inherent safeguards contained within claims of vexatious litigation protect the civil advocate from retaliatory litigation and limit the circumstances in which such a claim may be brought.

In disagreeing with our determination, the concurring and dissenting opinion engages in a lengthy analysis of case law from, inter alia, Kansas, California, Illinois, Ohio,[25] and Hawaii[26] rejecting the creation of a cause of action for malicious defense. For example, the concurring and dissenting opinion refers to the fact that

[25] Connecticut law differs from that of Ohio in one significant respect: that is, for purposes of an action for vexatious litigation, a plaintiff in Connecticut does not need to show that the defendant initiated the prior action. See *Bhatia* v. *Debek*, 287 Conn. 397, 406, 948 A.2d 1009 (2008) (explaining that initiation of lawsuit or action is not element of vexatious litigation). Instead, all that is required with respect to the prior action requirement is that there was a prior civil or administrative action involving the parties that terminated in the plaintiff's favor. Ohio, on the other hand, requires as an essential element to a cause of action for malicious civil prosecution that the plaintiff allege "malicious institution of prior proceedings against the plaintiff by [the] defendant . . . ." (Internal quotation marks omitted.) *Robb* v. *Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St. 3d 264, 269, 662 N.E.2d 9 (1996). Because Ohio requires that the party against whom the malicious prosecution claim is brought must have instituted the prior proceeding, it necessarily follows that an action for malicious civil prosecution in Ohio may not be premised on a defense asserted in the prior action without probable cause. Ohio, however, has a vexatious litigator statute, pursuant to which any person deemed to be a vexatious litigator may be prohibited from further filing in various Ohio courts without prior approval. See Ohio Rev. Code Ann. § 2323.52 (West 2017); *State ex rel. Mobley* v. *Franklin County Board of Commissioners*, 173 Ohio St. 3d 568, 570, 231 N.E.3d 1146 (2023). A vexatious litigator is defined as "[a]ny person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions, whether in the court of claims or in a court of appeals, court of common pleas, municipal court, or county court, whether the person or another person instituted the civil action or actions, and whether the vexatious conduct was against the same party or against different parties in the civil action or actions." Ohio Rev. Code Ann. § 2323.52 (A) (3) (West 2017). "Conduct" for purposes of the statute includes "[t]he filing of a civil action, *the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading*, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action . . . ." (Emphasis added.) Ohio Rev. Code Ann. § 2323.51 (A) (1) (a) (West 2017).

[26] It is noteworthy that the concurring and dissenting opinion relies on cases from states, namely, Kansas, California, Illinois, Ohio and Hawaii, in which actions for malicious prosecution, whether based on prior civil or criminal proceedings, are expressly disfavored. See, e.g., *Zamos* v. *Stroud*,

"California courts repeatedly have resisted attempts to impose liability on defendants who maliciously defend a civil action," as well as the reasoning of other states that agree and have determined that, "[i]f the wrongful conduct of a defendant causing the plaintiff to sue him would give rise to an independent tort and a separate cause of action, there would be no end to the litigation . . . ." (Internal quotation marks omitted.) The flaw in this argument, first and foremost, is that Connecticut clearly permits a cause of action for vexatious litigation, under the common law and pursuant to statute, based on a party's conduct in defending a civil action; we simply do not refer to it as an action for malicious defense. The most common example is an action for vexatious litigation based on a special defense filed or maintained in bad faith and without probable cause in a prior civil action. See *Rozbicki* v. *Sconyers*, supra, 198 Conn. App. 769. The narrow issue in the present case is not whether Connecticut should recognize the tort of malicious defense but, rather, whether under Connecticut law, which allows a cause of action to be based on a party's conduct in defending or unnecessarily continuing a civil action, a party's denial in its answer of a complaint's factual allegations that allegedly are known to be true, which is made without probable cause, can form the basis for a vexatious litigation action. In other words, does such conduct constitute continuing or prolonging litigation for purposes of a claim under the common law, or does it constitute "asserting a defense" for purposes of a statutory cause

32 Cal. 4th 958, 966, 87 P.3d 802, 12 Cal. Rptr. 3d 54 (2004) (tort of malicious prosecution is disfavored); *Young* v. *Allstate Ins. Co.*, 119 Haw. 403, 420, 198 P.3d 666 (2008) (same); *Budd* v. *Walker*, 60 Kan. App. 2d 189, 197–98, 491 P.3d 1273 (same), review denied, 314 Kan. 854,      P.3d      (2021); *Beaman* v. *Freesmeyer*, 131 N.E.3d 488, 494 (Ill. 2019) (same); *Froehlich* v. *Ohio Dept. of Mental Health*, Docket No. 05AP-129, 2005 WL 3557449, *3 (Ohio App. December 30, 2005) (same), aff'd, 114 Ohio St. 3d 286, 871 N.E.2d 1159 (2007). Connecticut courts have not taken this view of actions for vexatious litigation, as discussed previously in this opinion.

of action for vexatious litigation. The concurring and dissenting opinion's analysis of that issue, therefore, is entirely inapposite to the issue before this court in the present case.

The concurring and dissenting opinion also incorrectly focuses on the concept of general denials of liability, which is not at issue in this case. The *Smith* action did not involve an allegation of negligence *against the defendant*, nor has the plaintiff premised this vexatious litigation action on the defendant's failure to admit its negligence in the *Smith* action. See footnote 33 of this opinion. The plaintiff's vexatious litigation action is based on the defendant's conduct in prolonging the breach of contract action brought against it by denying various material allegations in the *Smith* action it allegedly knew to be true, including, inter alia, that (1) Smith failed to stop or slow his vehicle when he entered the intersection, causing the collision with the plaintiff's vehicle, (2) the collision and resulting injuries to the plaintiff were caused by Smith's negligence, (3) the plaintiff sustained physical injuries, some of which were permanent in nature, as a direct and proximate cause of Smith's negligence, (4) the plaintiff incurred expenses for medical care and treatment as a result of Smith's negligence, lost wages from missing work due to the injuries sustained in the collision and has been permanently impaired in her ability to enjoy life's activities, (5) Smith was underinsured at the time of the collision, (6) the plaintiff complied with her duties under her insurance policy with the defendant, and (7) the defendant is liable to the plaintiff under the terms of that policy.

The allegations in the *Smith* action include language of causation, relating to both the cause of the collision and the cause and extent of the plaintiff's alleged injuries. As we explain more fully in part II of this opinion, it is without question that a defendant need not accept

a plaintiff's allegations regarding causation of injuries. With respect to the allegations concerning the cause of the collision, however, at the time the defendant answered the complaint, it was not disputed, as demonstrated by the defendant's own investigation of the collision and Smith's admission of liability and settlement with the plaintiff, that Smith was responsible for the collision as a result of his failure to stop at a stop sign. The amended complaint in the *Smith* action also includes factual allegations concerning the circumstances of the collision, that Smith was underinsured and that the plaintiff had complied with her duties under her insurance contract. In accordance with our rules of practice, "[t]he defendant in the answer shall specially deny such allegations of the complaint as the defendant intends to controvert, admitting the truth of the other allegations, unless the defendant intends *in good faith* to controvert all the allegations, in which case he or she may deny them generally." (Emphasis added.) Practice Book § 10-46. Evasive denials are addressed by Practice Book § 10-47, which provides: "Denials must fairly meet the substance of the allegations denied. Thus, when the payment of a certain sum is alleged, and in fact a lesser sum was paid, the defendant cannot simply deny the payment generally, but must set forth how much was paid to the defendant; and where any matter of fact is alleged with divers circumstances, some of which are untruly stated, it shall not be sufficient to deny it as alleged, but so much as is true and material should be stated or admitted, and the rest only denied." These provisions instruct that, in Connecticut, "[i]f the allegation is true in part, that part should be admitted and the balance denied. Evasive denials are not to be countenanced." J. Kaye & W. Effron, 2 Connecticut Practice Series: Civil Practice Forms (4th Ed. 2004) Form 105.3, authors' comment, p. 155.

Indeed, the defendant in the present case exemplified this practice in its December 15, 2016 answer when it

admitted the portion of paragraph 7 of the amended complaint in the *Smith* action alleging that the accident was caused by "Smith's failure to keep a proper and reasonable lookout for other motor vehicles upon the roadway," but asserted that it was without sufficient information to either admit or deny the remaining allegations of paragraph 7. Although the defendant admitted the portion of the allegation pertaining to causation, we recognize that, ordinarily, to the extent an allegation in a complaint concerns causation or liability but also makes factual assertions, a defendant may, in good faith, deny the portion relating to causation or liability if it intends to controvert such allegations but must admit any portion which it knows to be true. Therefore, in the present case, even though the allegations of the complaint in the *Smith* action that are at issue in this case pertain, in part, to causation and liability, the defendant was still required to admit those portions of the allegations it knew to be true. Requiring a defendant to do so is entirely consistent with the pleading requirements in this state and will not impose any new or unnecessary burdens on parties.

Accordingly, we conclude, under the particular facts of this case, that the allegations of count one of the complaint concerning the defendant's alleged bad faith pleading in the *Smith* action properly assert a cause of action for vexatious litigation under the common law.[27]

---

[27] Our decision today should not be construed as a statement that the plaintiff will be successful in proving this claim at a trial. This case comes before us on an appeal from the granting of a motion for summary judgment, in which we must construe the allegations of the complaint and the evidence in the light most favorable to the plaintiff. Even though we have concluded that the vexatious litigation counts can properly be based on the defendant's alleged bad faith pleading in the *Smith* action, at a trial of the matter the plaintiff still must prove the elements of those counts and any damages she has suffered. Moreover, the concurring and dissenting opinion also spends significant time discussing the admissions made by the defendant in response to the request for admissions filed by the plaintiff. See footnote 6 of this opinion. Those admissions may impact the amount of damages, if any, suffered by the plaintiff but have no bearing on the issue of whether the

Finally, we address the defendant's contention that the plaintiff's "remedy for an untrue or unfounded allegation in a pleading is . . . § 52-99 and Practice Book § 10-5, not a vexatious litigation action." (Footnotes omitted.) As we have noted in this opinion, both § 52-99 and Practice Book § 10-5 permit a party to seek monetary sanctions when "[a]ny allegation or denial [is] made without reasonable cause and found [to be] untrue . . . ." Neither the statute nor the rule of practice, however, includes language indicating that it is the exclusive remedy for untrue pleadings, nor has the defendant directed this court to any authority supporting that proposition. In the absence of any such limiting language or authority, we cannot conclude that the plaintiff's only remedy for the defendant's untrue pleadings in the *Smith* action was to seek sanctions pursuant to § 52-99 or Practice Book § 10-5.[28] See *Caciopoli* v. *Lebowitz*, 309 Conn. 62, 72, 68 A.3d 1150 (2013) ("[T]he legislature is capable of providing explicit limitations when that is its intent. . . . In the absence of explicit language indicating that the statute is the exclusive remedy, we will not presume that the legislature intended to occupy the field and preempt a common-law cause of action. See *Lynn* v. *Haybuster Mfg.*, *Inc.*,

---

defendant had probable cause to plead denials in its answer and amended answers, which were filed *prior* to the admissions.

[28] We find persuasive statements of the Hawaii Supreme Court in *Arquette* v. *State*, 128 Haw. 423, 431–33, 290 P.3d 493 (2012), in which the court first recognized a cause of action for maintaining a malicious prosecution. The court stated that doing so was necessary to "properly guard against the harms associated with protracted litigation," and that litigation can have "a profound effect upon the quality of one's life that goes beyond the mere entitlement to counsel fees." (Internal quotation marks omitted.) Id., 431. The court explained further that "the existing rules and statutes do not fully remedy the harms inflicted by protracted litigation"; id., 432; in that, "[a]lthough the conduct associated with continuing a malicious prosecution is subject to sanctions [of attorney's fees], attorney's fees may not always provide a complete remedy to a litigant . . . ." (Footnote omitted.) Id., 432–33.

[226 Conn. 282, 290, 627 A.2d 1288 (1993)] ([t]he legislature's intent is derived not in what it meant to say, but in what it did say . . .") (Citations omitted; internal quotation marks omitted.)).

Moreover, the fact that other remedies exist with respect to allegations or denials in pleadings made without reasonable cause and found to be untrue undermines any exclusivity argument relating to § 52-99 and Practice Book § 10-5.[29] For example, a "trial court, in the exercise of its inherent authority, may impose sanctions of attorney's fees for a course of bad faith pleading." *Fattibene* v. *Kealey*, 18 Conn. App. 344, 344, 558

---

[29] We also point out that rule 11 of the Federal Rules of Civil Procedure similarly "provides a vehicle for sanctioning an attorney, a client, or both . . . [and] is aimed at curbing abuses of the judicial system . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *United States* v. *International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 948 F.2d 1338, 1343 (2d Cir. 1991). Federal courts have determined that "the Federal Rules of Civil Procedure, including [r]ule 11, do not preempt malicious prosecution claims predicated on federal civil actions. See, e.g., *U.S. Express Lines* [*Ltd.* v. *Higgins*, 281 F.3d 383, 393 (3d Cir. 2002)]; *Cohen* v. *Lupo*, 927 F.2d 363, 365 (8th Cir. 1991); *Tarkowski* v. *County of Lake*, 775 F.2d 173, 175 (7th Cir. 1985); *McShares, Inc.* v. *Barry*, 266 Kan. 479, [491–92, 970 P.2d 1005] (1998) ('Rule 11 cannot abridge the substantive state law of malicious prosecution, nor was it adopted to serve as a surrogate for an action based upon a claim of malicious prosecution resulting from frivolous, harassing, or vexatious litigation.'); *Del Rio* v. *Jetton*, 55 Cal. App. 4th 30, [37] 63 Cal. Rptr. 2d [712] (1997) ('Nothing in [r]ule 11 indicates an intent to occupy the entire field of groundless suits brought for malicious purpose, nor is there any conflict between [r]ule 11 and a damages action for such malicious prosecution.'). As the [r]ule 11 advisory committee observed, 'Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions. . . . *Rule 11 does not preclude a party from initiating an independent action for malicious prosecution or abuse of process.*' [Fed. R. Civ. P.] 11 advisory committee's note . . . . Thus, the United States Supreme Court is 'confident that district courts will resist the temptation to use [rule 11] sanctions as substitutes for tort damages.' [*Business*] *Guides, Inc.* v. *Chromatic* [*Communications Enterprises*], *Inc.*, 498 U.S. 533, 553, 111 S. Ct. 922, 112 L. Ed. 2d 1140 (1991)." (Emphasis in original.) *Graber* v. *Fuqua*, 279 S.W.3d 608, 613–14 (Tex.), cert. denied, 558 U.S. 880, 130 S. Ct. 288, 175 L. Ed. 2d 136 (2009). This analysis regarding rule 11 provides further support for our determination that the sanctions

A.2d 677 (1989). This court has "long recognized that, apart from a specific rule of practice authorizing a sanction, the trial court has the inherent power to provide for the imposition of reasonable sanctions, to compel the observance of its rules. . . . Our trial courts have the inherent authority to impose sanctions against an attorney and his client for a course of claimed dilatory, bad faith and harassing litigation conduct, even in the absence of a specific rule or order of the court that is claimed to have been violated." (Internal quotation marks omitted.) *Stein* v. *Horton*, 99 Conn. App. 477, 489, 914 A.2d 606 (2007). Additionally, under rule 3.1 of the Rules of Professional Conduct, "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." See *O'Brien* v. *Superior Court*, 105 Conn. App. 774, 786–87, 939 A.2d 1223 ("[W]e recently have recognized that, although a claim need not be based on fully substantiated facts when filed, once it becomes apparent that the claim lacks merit, an attorney violates rule 3.1 by persisting with the claim, rather than withdrawing it. *Brunswick* v. *Statewide Grievance Committee*, [103 Conn. App. 601, 619, 931 A.2d 319] ('rule 3.1 prohibits an attorney from asserting . . . a claim on which the attorney reasonably is unable to maintain a good faith argument on the merits').")., cert. denied, 287 Conn. 901, 947 A.2d 342 (2008).

We also find informative our Supreme Court's statements and analysis in the plaintiff's appeal in the *Smith* action, particularly its statement that a vexatious suit was one of many remedies available to the plaintiff for her claim "challeng[ing] the defendant's conduct in defending against her underinsured motorist claim."

available under § 52-99 and Practice Book § 10-5 do not preclude a tort action for vexatious litigation based on the same conduct.

*Dorfman* v. *Smith*, supra, 342 Conn. 597. In *Dorfman*, the court described the plaintiff's claim in the *Smith* action that the defendant had breached the implied covenant of good faith and fair dealing as follows: "The plaintiff alleged that the defendant *falsely responded to the complaint*, including by asserting a special defense the defendant knew had no basis in fact, as well as falsely responding to interrogatories and discovery requests. As a result, the defendant 'used intentional misstatements, intentional misrepresentations, *intentionally deceptive answers*, and violated established rules of conduct in litigation,' and 'knowingly and intentionally engaged in dishonest and sinister litigation practices by taking legal positions that were without factual support in order to further frustrate [the plaintiff's] ability to receive benefits due [to her] under her contract.' According to the plaintiff, through this conduct, the defendant (1) engaged in unfair, deceptive, and self-serving conduct, (2) deceitfully and maliciously attributed responsibility for the car crash to the plaintiff, (3) compelled the plaintiff to resort to litigation to obtain her benefits, and (4) *filed false and misleading answers in pleadings* and discovery responses it knew had no basis in fact to prolong litigation and to attempt to reduce the plaintiff's insurance benefits." (Emphasis added.) Id., 595. These allegations are very similar to those made by the plaintiff in the present action with respect to her claims for vexatious litigation.

Although the court in *Dorfman* v. *Smith*, supra, 342 Conn. 596, ultimately applied the litigation privilege to bar the plaintiff's claim for breach of the implied covenant of good faith and fair dealing, it recognized the "unfairness" in that result and, thus, stressed "the importance of the availability of other remedies." Id., 599. In addition to pointing out the monetary sanctions available pursuant to § 52-99, the court noted that "the trial court has the inherent authority to sanction parties

for litigation misconduct"; id., 611; and that "a party may file a motion to open a judgment on the ground that the judgment was obtained by fraud or intentional, material misrepresentation." Id., 612. The court further stated: "[A]s we noted in *DeLaurentis*, '[p]arties and their counsel who abuse the process by bringing unfounded actions for personal motives are subject to civil liability for vexatious suit or abuse of process.' *DeLaurentis* v. *New Haven*, supra, [220 Conn. 264]. Importantly, in the present case, upon a prior action terminating in her favor, the plaintiff could have brought a lawsuit for vexatious litigation. In fact, that is what she did. These other remedies belie the plaintiff's argument that, if immunity is granted, this court will open the floodgates to insurance companies using the litigation privilege as a loophole to engage in misconduct and deprive insureds of their contractual benefits." *Dorfman* v. *Smith*, supra, 612. We, therefore, reject the defendant's claim that the plaintiff's remedy for an untrue or unfounded allegation in a pleading is limited to § 52-99 and Practice Book § 10-5.

B

We now turn to the plaintiff's claims in counts two and three of the complaint alleging violations of the vexatious litigation statute, § 52-568, which is titled "Damages for groundless or vexatious suit or defense." Pursuant to § 52-568, "[a]ny person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or *asserts a defense* to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages." (Emphasis added.) The allegations of counts two and three parallel those of count one and are based on the same alleged vexatious

conduct of the defendant concerning its initial and three subsequent amended answers and its denials of allegations it allegedly knew to be true, with the exception of the allegations of malice, which are absent from count two.

In her supplemental brief to this court, the plaintiff argues that, pursuant to the plain language of § 52-568, her statutory vexatious litigation counts are properly premised on the defendant's initial and subsequent amended answers to the complaint in the *Smith* action. In making this argument, the plaintiff focuses on the phrase "asserts a defense" in § 52-568 and the fact that defenses must be set forth in a party's answer. She also relies on *Patchen* v. *Delohery Hat Co.*, 82 Conn. 592, 594, 74 A. 881 (1909), in which our Supreme Court of Errors stated that the defendant, in framing its answer, had a "duty to plead the truth," which is embodied in our statutes and rules of practice. In its supplemental brief, the defendant has not directly addressed the plaintiff's argument about the plain language of the statute and, in a single sentence addressing the statute, asserts that § 52-568 "does not proscribe specific allegations in a pleading if there is otherwise probable cause for the action or the defense."

Our resolution of this issue requires us to construe § 52-568, which "presents a question of law over which our review is plenary." (Internal quotation marks omitted.) *Karanda* v. *Bradford*, 210 Conn. App. 703, 711, 270 A.3d 743 (2022). Our analysis of § 52-568 is guided by the plain meaning rule in General Statutes § 1-2z, which provides that "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous

and does not yield absurd or unworkable results, extra-textual evidence of the meaning of the statute shall not be considered."

Section 52-568 does not define the word "defense" in the context of the statute. "When a statute does not define a term, General Statutes § 1-1 (a) directs that we construe the term according to its commonly approved usage, mindful of any peculiar or technical meaning it may have assumed in the law. We may find evidence of such usage, and technical meaning, in dictionary definitions, as well as by reading the statutory language within the context of the broader legislative scheme." (Internal quotation marks omitted.) *777 Residential, LLC* v. *Metropolitan District Commission*, 336 Conn. 819, 831, 251 A.3d 56 (2020). Our Supreme Court recently addressed the definition of the word "defense" as it is used in Practice Book § 23-18, which applies to "any action to foreclose a mortgage where no defense as to the amount of the mortgage debt is interposed," and does not define the term "defense." Our Supreme Court stated: "[W]e look to the commonly approved usage of the word. See, e.g., *Ugrin* v. *Cheshire*, 307 Conn. 364, 380, 54 A.3d 532 (2012). Black's Law Dictionary defines 'defense' as '[a] defendant's stated reason why the plaintiff or prosecutor has no valid case . . . a defendant's answer, denial, or plea . . . .' Black's Law Dictionary (11th Ed. 2019) p. 528. . . . A 'stated reason' 'in law or fact' that challenges a plaintiff's right to recover includes a legal or factual argument raised in opposition to that party." (Citation omitted.) *JPMorgan Chase Bank, National Assn.* v. *Malick*, 347 Conn. 155, 168–69, 296 A.3d 157 (2023); see also Merriam-Webster's Collegiate Dictionary, supra, p. 326 (similarly defining "defense" as "a defendant's denial, answer, or plea"). Under this commonly used and broad definition, "defense" includes anything that defeats the claim asserted, whether it be by way of a special or affirmative

defense asserted in an action,[30] as well as by an answer denying the allegations of a complaint, which is a form of a defense to the action and is done to oppose or to challenge the validity of the allegations of a complaint. See Practice Book § 10-46 ("[t]he defendant in the answer shall specially deny such allegations of the complaint as the defendant intends to controvert"). We do not find ambiguity in the language of the statute.

The concurring and dissenting opinion acknowledges that our Supreme Court has defined the word "defense" to include a defendant's answer, denial or plea, but nonetheless concludes that the term should not be construed as such in § 52-568 because "[t]he legislature . . . did not include the term 'denial' in enacting or amending § 52-568," and if it had "intended to include general denials within the ambit of § 52-568, it could have defined the term 'defense,'" or it could have enacted the statute to apply to any person who " 'asserts a *denial or* defense to any civil action . . . .' " (Emphasis in original.) We reject this contention for two reasons. First, when a statute or rule of practice does not define a term, as our Supreme Court instructs, "it is appropriate to consult contemporaneous dictionary definitions. See, e.g., *Ledyard* v. *WMS Gaming, Inc.*,

---

[30] "Practice Book § 10-50 defines the purpose of a special defense. That section, titled, 'Denials; Special Defenses,' provides in relevant part: 'No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged . . . .' Practice Book § 10-50." *Kaye* v. *Housman*, supra, 184 Conn. App. 817. "An answer and a special defense have legally distinct functions . . . ." Id., 816–17. "The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." (Internal quotation marks omitted.) Id., 818. "It is axiomatic that a special defense is not provable under a simple denial, because, by definition, a special defense is a claim that defeats the plaintiff's cause of action without disproving it." *Bruno* v. *Whipple*, 162 Conn. App. 186, 203, 130 A.3d 899 (2015), cert. denied, 321 Conn. 901, 138 A.3d 280 (2016).

338 Conn. 687, 697, 258 A.3d 1268 (2021) ('in the absence of statutory definitions, we look to the contemporaneous dictionary definitions of words to ascertain their commonly approved usage'); see also General Statutes § 1-1 (a) ('[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language')." *Cerame* v. *Lamont*, 346 Conn. 422, 428, 291 A.3d 601 (2023); see also *Dunn* v. *Northeast Helicopters Flight Service, LLC*, 346 Conn. 360, 377, 290 A.3d 780 (2023) ("[i]n the absence of statutory definitions, we again look to the common usage of each term"). The commonly approved usage of the term "defense" is the one set forth in Black's Law Dictionary (12th Ed. 2024) p. 528, and Merriam-Webster's Collegiate Dictionary, supra, p. 326, not what the concurring and dissenting opinion considers to be "the most familiar legal sense" of the word "as used by legal practitioners in this state . . . ." In the absence of any indication that the term "defense" as used in § 52-568 was intended to have a technical or special meaning; see *Perruccio* v. *Allen*, 156 Conn. 282, 286, 240 A.2d 912 (1968); we see no reason to depart from our regular practice of looking to the common usage of a term as defined in dictionaries. Second, because the commonly used definition of "defense" necessarily includes a denial, it would have been superfluous for our legislature to add that word to the statutory language. Courts "must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.) *Blondeau* v. *Baltierra*, 337 Conn. 127, 143, 252 A.3d 317 (2020).

In our view, the concurring and dissenting opinion also incorrectly takes the position that the statutory

language—asserts a defense—"refers to defenses that are affirmatively pleaded, rather than general denials set forth in a defendant's answer." At the outset, we point out the familiar principle that, if the legislature wanted to limit the type of defense to which the statute applies—for example, to the assertion of a special or affirmative defense—it easily could have so provided. See *Dunn* v. *Northeast Helicopters Flight Service, LLC*, supra, 346 Conn. 375; see also *Curley* v. *Phoenix Ins. Co.*, 220 Conn. App. 732, 769, 299 A.3d 1133 ("[t]he absence of . . . language [in a statute] is significant, 'as it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so' "), cert. denied, 348 Conn. 914, 303 A.3d 260 (2023). Instead of using the term "special defense," the legislature used the broader term "defense."

This is especially true, in light of the distinct functions of an answer and special defense, both of which are ways to "assert a defense" to an action. See footnote 30 of this opinion. For example, not all defenses are special or affirmative defenses. See *Shaheer* v. *Commissioner of Correction*, 207 Conn. App. 449, 461 n.6, 262 A.3d 152 ("duress is a defense to a crime . . . [but] not an affirmative defense" (citation omitted; internal quotation marks omitted)), cert. denied, 340 Conn. 903, 263 A.3d 388 (2021); *Pawlinski* v. *Allstate Ins. Co.*, 165 Conn. 1, 6, 327 A.2d 583 (1973) ("Practice Book § 120 [now § 10-50] lists some of the defenses which must be specially pleaded and proved"). "As a general rule, facts must be pleaded as a special defense when they are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . The fundamental purpose of a special defense, like other pleadings, is to apprise the court and opposing counsel of the issues to be tried,

so that basic issues are not concealed until the trial is underway." (Internal quotation marks omitted.) *Coughlin* v. *Anderson*, 270 Conn. 487, 501, 853 A.2d 460 (2004). Also, "[t]here is a distinction between matters which may be proved under a general denial and matters constituting special defenses [which must be specially pleaded]." (Internal quotation marks omitted.) *Bennett* v. *Chenault*, 147 Conn. App. 198, 202, 81 A.3d 1184 (2013). That distinction "was enunciated in *Pawlinski* v. *Allstate Ins. Co.*, [supra, 1], where [our Supreme Court] observed . . . that [t]he issues to be tried may be framed in several ways. A denial of a material fact places in dispute the existence of that fact. Even under a denial, a party generally may introduce affirmative evidence tending to establish a set of facts inconsistent with the existence of the disputed fact. . . . If, however, a party seeks the admission of evidence which is consistent with a prima facie case, but nevertheless would [independently] destroy the cause of action, the new matter must be affirmatively pleaded as a special defense." (Internal quotation marks omitted.) *Barrows* v. *J.C. Penney Co.*, 58 Conn. App. 225, 233, 753 A.2d 404, cert. denied, 254 Conn. 925, 761 A.2d 751 (2000); see also Practice Book § 10-50 ("No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged.").

In *Bennett* v. *Chenault*, supra, 147 Conn. App. 203, for example, the defendant, by her answer, "denied the plaintiff's claim of negligence and raised a special defense of comparative negligence." This court stated that "[t]he *denial of negligence* and the allegation of a special defense thus constitute[d] *separate and distinct defenses*, either of which [could] support the jury's general verdict." (Emphasis added.) Id. Similarly, in *Mulcahy* v. *Hartell*, 140 Conn. App. 444, 446, 59 A.3d 313

(2013), the dispositive issue before this court was "whether evidence of a plaintiff's posttreatment conduct may be offered by a defendant under a general denial for the purpose of showing that the plaintiff's conduct was the sole proximate cause of her injuries." This court concluded that "the claim that an actor other than the defendant caused the plaintiff's injuries is inconsistent with a prima facie negligence case, and, thus, can be pursued under a general denial. The essence of the *defense at issue* in the present case was that the plaintiff was entirely responsible for her injuries; therefore, the court correctly admitted it without the assertion of a special defense"; (emphasis added) id., 450; and "pursuant to a general denial." Id., 452. What is evident from these cases is that a party, by generally denying factual allegations of a complaint, is, in effect, asserting a defense to those allegations.

The defendant has not directed us to any authority suggesting that a denial in an answer is not a defense or establishing that the term "defense" as used in § 52-568 must be limited to special defenses. We conclude that to do so would be contrary to the purpose of § 52-568, which "make[s] it clear that it is the strong public policy of this state to discourage dishonesty during the litigation process . . . ." *Dorfman* v. *Smith*, supra, 342 Conn. 644 (*Ecker, J.*, concurring in part and dissenting in part). As we stated previously in this opinion, we must read the term "defense" in § 52-568 within the context of the broader legislative scheme. "Connecticut's vexatious litigation statute strives to deter parties from bringing claims [or asserting defenses] without probable cause and with malicious intent." *Metcalf* v. *Fitzgerald*, 333 Conn. 1, 29, 214 A.3d 361 (2019), cert. denied,     U.S.    , 140 S. Ct. 854, 205 L. Ed. 2d 460 (2020). It serves to recognize "the right of an individual to be free from unjustifiable litigation . . . ." (Internal quotation marks omitted.) *Bernhard-Thomas Building*

*Systems, LLC* v. *Dunican*, supra, 286 Conn. 553–54. That right applies whether a party "commences and prosecutes" an action without probable cause, as well as whether a party unjustly "asserts a defense" to an action without probable cause, whether by way of filing an answer to a complaint denying allegations of a complaint that are known to be true or asserting a groundless special defense.

Significantly, our Supreme Court has stated repeatedly that "[a] statutory action for vexatious litigation under . . . § 52-568 . . . differs from a common-law action *only* in that a finding of malice is not an essential element, but will serve as a basis for higher damages." (Citation omitted; emphasis added.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 94; see also *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, supra, 286 Conn. 554; *DeLaurentis* v. *New Haven*, supra, 220 Conn. 256; *Christian* v. *Iyer*, 221 Conn. App. 869, 877, 303 A.3d 604 (2023). "[Vexatious suit] is the appellation given in this [s]tate to the cause of action created by statute . . . § 52-568 . . . for the malicious prosecution of a civil suit . . . which [our Supreme Court has] said was governed by the same general principles as the common-law action of malicious prosecution." (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 103; see also *Embalmers' Supply Co.* v. *Giannitti*, 103 Conn. App. 20, 46, 929 A.2d 729 ("§ 52-568 represents a statutory codification of the common-law cause of action for vexatious litigation"), cert. denied, 284 Conn. 931, 934 A.2d 246 (2007).

Courts consistently have applied the continuation theory under § 674 of the Restatement (Second) of Torts to both statutory and common-law claims of vexatious litigation; see *Diamond 67, LLC* v. *Oatis*, supra, 167

Conn. App. 683 (with respect to action alleging common-law and statutory claims for vexatious litigation, "genuine issue of material fact [existed] as to each defendant's participation in the initiation, procurement, and/or continuation of their respective interventions in the plaintiff's administrative and mandamus actions"); *Schaeppi* v. *Unifund CCR Partners*, supra, 161 Conn. App. 41–42 (statutory vexatious litigation count based on defendant's continuing to prosecute foreclosure action and appeal from denial of motion to open foreclosure judgment); see also *Rousseau* v. *Weinstein*, supra, 204 Conn. App. 851 (action raising common-law and statutory vexatious litigation claims alleging that "defendants lacked probable cause to commence and to continue [a] civil action"); and claims for vexatious litigation have been brought on the basis of actions apart from commencing and prosecuting a civil action or asserting a counterclaim or special defense, although we note that the precise issue of whether the statute supports such actions was not before the courts in those cases. See *Diamond 67, LLC* v. *Oatis*, supra, 668 (interventions in administrative action); *Schaeppi* v. *Unifund CCR Partners*, supra, 41–42 (appeal from denial of motion to open foreclosure judgment); *Spilke* v. *Wicklow*, 138 Conn. App. 252, 261, 53 A.3d 245 (2012) (vexatious litigation claim stemmed from filing of motion for contempt), cert. denied, 307 Conn. 945, 60 A.3d 737 (2013);[31] *Perez* v. *D & L Tractor Trailer School,*

---

[31] We note that in *Spilke* v. *Wicklow*, supra, 138 Conn. App. 255–56, the plaintiff alleged claims for vexatious litigation, both under the common law and § 52-568, based on the defendant's conduct in filing a motion for contempt during divorce proceedings. Although the plaintiff argued on appeal that all of the proceedings surrounding the divorce were vexatious, this court disagreed and concluded that the vexatious litigation claims "stemm[ed] from the filing of the motion [for] contempt, and not from the divorce proceedings." Id., 261. The plaintiff was awarded $10,001 in damages with respect to her common-law claim, and the trial court determined that she was entitled to treble the damages under § 52-568, for a total award of $30,003. Id., 256. Because the defendant did not argue on appeal that the court abused its discretion in awarding treble damages, however, this court did not address that issue.

117 Conn. App. 680, 685, 981 A.2d 497 (2009) (appeal from unemployment compensation benefits award), cert. denied, 294 Conn. 923, 985 A.2d 1062 (2010); *Embalmers' Supply Co.* v. *Giannitti*, supra, 103 Conn. App. 49 (shareholder litigation and subsequent appeal therefrom); *Duse* v. *Carter*, supra, 9 Conn. App. 219 (filing motion for contempt in prior marital dissolution action without probable cause); *Nutmeg Financial Holdings*, *LLC* v. *Bachleda*, supra, Superior Court, Docket No. CV-21-6142429-S (moving to open judgment and appealing therefrom); *Silano* v. *Verespy*, supra, 68 Conn. L. Rptr. 438 (filing motion for summary judgment).

In light of the foregoing, we conclude, under the particular facts of this case, that the allegations of counts two and three of the complaint concerning the defendant's alleged bad faith pleading in its answers in the *Smith* action properly assert causes of action for vexatious litigation pursuant to § 52-568.

Accordingly, we reject the defendant's claim that an action for vexatious litigation, whether under the common law or § 52-568, cannot be based on allegedly false answers to a complaint in a prior action.

II

We now address the plaintiff's claim that the court erred in determining that no genuine issues of material fact exist as to whether the defendant had probable cause to answer the complaint in the *Smith* action in the manner it did and to assert the special defense of contributory negligence. Specifically, the plaintiff argues that the defendant did not meet its burden, as the party moving for summary judgment, of establishing the absence of a genuine issue of material fact concerning probable cause because it did not provide evidence in support of its motion demonstrating that it had any factual basis for asserting the denials in its answer as

well as its special defense of contributory negligence. Thus, the plaintiff argues, the burden never shifted to her to submit documents establishing the existence of such an issue of fact. The plaintiff's second claim is that the court misapplied the standard for summary judgment when it failed to construe the evidence in the light most favorable to the plaintiff. Because these claims are related, we address them together.

The following general principles guide our analysis of these claims. "[T]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man [or woman] in the belief that he [or she] has lawful grounds for prosecuting the defendant in manner complained of. . . . Thus, in the context of a vexatious suit action, the defendant lacks probable cause if he [or she] lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted. . . . [T]he existence of probable cause is an absolute protection against an action for [vexatious litigation], and what facts, and whether particular facts, constitute probable cause is always a question of law. . . . Because the question of whether there is probable cause in a vexatious litigation case is a question of law, our scope of review is plenary." (Citation omitted; internal quotation marks omitted.) *Rousseau* v. *Weinstein*, supra, 204 Conn. App. 853–54. "[T]he probable cause standard applied to a vexatious litigation action against a litigant is a purely objective one." *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 95.

In the present case, to prevail on its motion for summary judgment, the defendant bore the initial burden to negate, with evidence, the factual claims as framed

by the vexatious litigation counts of the complaint. See *10 Marietta Street, LLC* v. *Melnick Properties, LLC*, 216 Conn. App. 262, 272, 285 A.3d 82 (2022) ("[o]n a motion by the defendant for summary judgment the burden is on [the] defendant *to negate each claim as framed by the complaint*" (emphasis in original; internal quotation marks omitted)); see also Practice Book § 17-45 (providing that motion for summary judgment must be supported by appropriate documents). The factual claims of those counts can be distilled to the following: the defendant lacked probable cause when it (1) asserted the special defense of contributory negligence and (2) denied the allegations of the complaint that stated that (a) Smith failed to stop and slow his vehicle when he approached the intersection and collided with the plaintiff's vehicle, (b) the collision and resulting injuries and damages sustained by the plaintiff were proximately caused by Smith's negligence, (c) the plaintiff suffered injuries, incurred medical bills, and lost wages as a result of Smith's negligence, (d) Smith was underinsured, (e) the plaintiff complied with her duties under the terms of her insurance policy with the defendant, and (f) the defendant was liable for her damages that exceeded the amount covered by Smith's insurance policy. In other words, the defendant had the burden to demonstrate the absence of any genuine issue of material fact that it had probable cause to assert that special defense and to deny these various allegations.

The probable cause inquiry in the present case, therefore, entails a consideration of whether, on the basis of the facts known by the defendant at the times it asserted the special defense and denied or asserted that it lacked sufficient information to admit or deny those allegations, a reasonable person familiar with Connecticut law would have believed that probable cause existed for the defendant to do so. See *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn.

104–105. In the present case, the court based its probable cause determination on the following reasoning: "The allegations required to be [pleaded] in a negligence action are generally not within a defendant's knowledge. In the present case, [the plaintiff's] complaint alleged that her injuries were proximately caused by the defendant's negligence. . . . [The plaintiff's] claim for vexatious litigation is founded on [the defendant's] being in possession of her medical bills and report, a witness' statement and the police report. These are facts, unlike the signing of a promissory note or mortgage deed, that are not within a defendant's personal knowledge or necessarily subject to ascertainment. Moreover, [the plaintiff's] assertion that possession of these documents establishes a basis to assert a basis for vexatious suit upon the failure to admit the veracity of the information contained in them would compel a finding that a defendant must make a credibility determination without the benefit of subjecting witnesses to the crucible of trial. . . . Similarly, [the plaintiff] alleged that Smith's negligence was a proximate cause of her injuries. Such a combined legal and factual conclusion is manifoldly not within the knowledge of the defendant. In the present case, as argued by [the defendant], 'it was necessary to fully substantiate facts and information through the course of discovery and, as that was done, the complaint was amended to address what had been substantiated."[32] Given the intrinsic

---

[32] On appeal, the defendant reiterates this argument, namely, that it is easier for counsel to plead contributory negligence in a case than it is not to plead it and then, after facts are developed, to move to amend the answer. When asked during oral argument before this court to specify the evidence in the record that supports its claim that it had probable cause to file the special defense of contributory negligence, the defendant's counsel stated that the defendant's position was that "there could be evidence developed" subsequent to the filing of its special defense. We disagree, as "Connecticut is a fact pleading jurisdiction," under which "allegations must be made 'with reasonable cause' and with a good faith belief in their truth. See Practice Book §§ 4-2 (b) and 10-5." *CIT Bank, N.A.* v. *Francis*, 214 Conn. App. 332, 354–55, 280 A.3d 485 (2022) (*Bright, C. J.*, concurring). Moreover, "discovery

uncertainty of the nature of a claim of injuries proximately caused by another's negligence,[33] [the defendant] had probable cause to answer the complaint in the manner in which it did." (Citation omitted; emphasis omitted; footnotes added.).

We first conclude that the court, in making its probable cause determination, did not apply the proper legal standard. See *Ferri* v. *Powell-Ferri*, 200 Conn. App. 63, 73, 239 A.3d 1216 (whether court applied correct legal standard involves question of law subject to plenary review), cert. denied, 335 Conn. 970, 240 A.3d 285 (2020). Nowhere in the court's decision did the court point out the specific information known to the defendant at the time it filed its answer, amended answers and special defense of contributory negligence, or that no genuine issue of material fact existed as to the defendant's knowledge, nor did the court determine whether a reasonable person, knowing that information, would have had a reasonable, good faith belief in the facts

is used to develop claims that have been properly pleaded, not to create them." Id., 357; see also *Somers* v. *Chan*, supra, 110 Conn. App. 535 ("[o]ur rules of practice require all allegations [in pleadings] to be founded on a reasonable basis"). Thus, the assertion of an allegation or special defense with *no* reasonable basis for doing so, and the use of discovery to see if the claim can be substantiated and amend the complaint if it cannot, is contrary to our pleading requirements. See Practice Book § 10-5 ("[a]ny allegation or denial made without reasonable cause and found untrue shall subject the party pleading the same to the payment of such reasonable expenses . . . as may have been necessarily incurred by the other party by reason of such untrue pleading").

[33] We note that the *Smith* action did not involve an allegation of negligence against the defendant. Rather, the plaintiff alleged negligence against Smith, who was underinsured and ultimately settled with the plaintiff for the limit of his policy, and the plaintiff alleged a claim of breach of contract against the defendant, which was brought into the action for purposes of providing coverage pursuant to the underinsured motorist provision of the plaintiff's insurance policy with the defendant. Significantly, the plaintiff has not based this vexatious ligation action on the defendant's failure to admit its own negligence in the *Smith* action, and, thus, the defendant's claims to that effect are without merit.

alleged in the answers and the validity of the special defense of contributory negligence asserted. We agree with the plaintiff that the court should have looked "critically at each representation at issue alongside the information within [the defendant's] knowledge at the time it made the representation," and determined whether any genuine issues of material fact existed as to the defendant's knowledge.

The court focused its analysis on whether genuine issues of material fact existed as to the cause of the plaintiff's injuries. We acknowledge that, generally, the truth of the allegations pleaded in a negligence action likely will not be within a defendant's knowledge and that it is typically necessary to substantiate information and facts regarding a party's claimed injuries. Indeed, it will be a rare case in which a party's denial of allegations concerning causation of injuries will give rise to a vexatious litigation claim. For that reason, it is understandable why the court focused its analysis on whether genuine issues of material fact existed as to the cause of the plaintiff's injuries, which is almost always disputed in a negligence action, even when there is no dispute as to the cause of the accident.

The present case, however, is not a typical negligence action, and, thus, the court's conclusion that the allegations of the complaint in the *Smith* action concerned matters "generally not within a defendant's knowledge" does not take account of all of the factual circumstances of this case. By limiting its analysis to the issue of the causation of the plaintiff's injuries, the court did not take into account the defendant's denials of allegations that Smith failed to stop and slow his vehicle when he approached the intersection and collided with the plaintiff's vehicle, the collision was caused by Smith's negligence, Smith was underinsured, the plaintiff complied with her duties under the terms of her insurance policy with the defendant, and the defendant was liable

under the plaintiff's insurance policy for her damages that exceeded the amount covered by Smith's insurance policy, as well as the defendant's assertion of the special defense of contributory negligence.

As we stated previously in this opinion, our rules of practice require that allegations, including denials, be made on a reasonable basis; see Practice Book § 10-5; and a defendant, in an answer, "shall specially deny such allegations of the complaint as the defendant intends to controvert, admitting the truth of the other allegations, unless the defendant intends *in good faith* to controvert all the allegations, in which case he or she may deny them generally." (Emphasis added.) Practice Book § 10-46. In other words, "[i]f the allegation is true in part, that part should be admitted and the balance denied. Evasive denials are not to be countenanced." 2 J. Kaye & W. Effron, supra, Form 105.3, authors' comment, p. 155. As we stated previously in this opinion, in the present case the defendant did just that in its December 15, 2016 answer when it admitted the portion of paragraph 7 of the amended complaint in the *Smith* action alleging that the accident was caused by "Smith's failure to keep a proper and reasonable lookout for other motor vehicles upon the roadway," but asserted that it was without sufficient information to either admit or deny the remaining allegations of that paragraph. In its initial and amended answers, however, the defendant asserted blanket denials of allegations in the *Smith* action, only a portion of which related to causation of the plaintiff's injuries, and the court did not take into consideration whether the defendant had probable cause to deny the portion of the allegations not relating to causation of the plaintiff's injuries, or the special defense of contributory negligence. As a result, the court did not consider if genuine issues of material fact existed as to whether the defendant had probable cause for answering the complaint in the manner in which it

did with respect to these other allegations and asserting the special defense, as the defendant's own internal investigation indicated that Smith was 100 percent responsible for causing the accident.

Moreover, in making its probable cause finding, the court does not appear to have considered each of the specific factual allegations in the complaint. This is apparent from the court's decision, which lacks references to many of the allegations concerning the information of which the defendant was aware when it filed its answer, amended answers, and special defense. Nor did the court consider whether the defendant submitted any evidence in support of its motion for summary judgment to rebut the plaintiff's allegations. The plaintiff also asserts that, if the court had applied the proper standard and viewed the evidence in the light most favorable to the plaintiff, "it would have seen that there were, at the very least, material issues of fact with respect to whether [the defendant] had probable cause for each of its representations in the pleadings and its special defense . . . ." We agree.

The court did refer in its decision to the allegation that the defendant's "own investigation concluded that . . . Smith was '100 [percent] liab[le]' for the accident" but, nevertheless, found probable cause for the defendant to assert the special defense of contributory negligence without addressing that allegation. Additionally, although the court did mention that "[the plaintiff's] claim for vexatious litigation [was] founded on [the defendant's] being in possession of her medical bills and report, a witness' statement and the police report," it excluded from that list of supporting documents a recorded statement the defendant had taken from the plaintiff and, nonetheless, concluded that the documents were facts "not within a defendant's personal knowledge . . . ." In *Dorfman* v. *Smith*, supra, 342 Conn. 586, our Supreme Court noted that, through the

course of the defendant's investigation of the plaintiff's claim, "the defendant acquired the police report regarding the collision, the plaintiff's recorded statement, and the recorded statement of . . . Guman, a witness to the collision who was not listed in the police report. The report and the statements all noted Smith's failure to stop at the stop sign. Based on this information, two claims specialists employed by the defendant both concluded that Smith was 100 percent liable for the collision and noted their findings in the claim file." The trial court in the present case concluded that the defendant lacked knowledge of the contents of those documents. There is nothing in the record, however, to support the court's determination, especially given that the defendant, as part of its business practice, undertook a lengthy and in-depth investigation into the circumstances of the accident, which took place over the course of one year prior to when the defendant was brought into the *Smith* action.[34] Moreover, the court's determination concerning the information within the defendant's knowledge or of which it was aware amounts to a factual finding regarding a disputed issue in the case; see generally *Roger B.* v. *Commissioner of Correction*, 190 Conn. App. 817, 839, 212 A.3d 693 (habeas court made factual finding about what petitioner knew), cert. denied, 333 Conn. 929, 218 A.3d 70 (2019), and cert. denied, 333 Conn. 929, 218 A.3d 71 (2019); *Winchester* v. *McCue*, 91 Conn. App. 721, 729,

---

[34] As we stated previously in this opinion, in the prior appeal in the *Smith* action, our Supreme Court, in construing the allegations of the complaint in the light most favorable to the plaintiff, noted that, "[i]n answering the complaint [on May 17, 2016], the defendant pleaded that either it denied or did not have sufficient information to admit the allegations that Smith had failed to stop at a stop sign, causing the collision and the plaintiff's resulting injuries. The defendant also asserted a special defense of contributory negligence, *even though it knew this to be false.*" (Emphasis added.) *Dorfman* v. *Smith*, supra, 342 Conn. 587. This further supports our determination that the court in the present case did not construe the allegations of the complaint in the light most favorable to the plaintiff.

882 A.2d 143 (there was sufficient factual basis for court's finding regarding independent knowledge possessed by parties), cert. denied, 276 Conn. 922, 888 A.2d 91 (2005); which is not appropriate on summary judgment.

Additionally, in the present case, the defendant did not submit documentary evidence or affidavits[35] demonstrating the absence of a genuine issue of material fact that it lacked knowledge of the contents of the documents and information gathered as part of its investigation, or demonstrating that it had an objectively reasonable, good faith belief in the facts alleged in its answer and amended answers, or in the validity of the special defense of contributory negligence asserted.[36] See *Rockwell* v. *Rockwell*, 178 Conn. App. 373, 397–98, 175 A.3d

[35] Nothing in DeStefano's affidavit negates the plaintiff's allegation that the defendant knew from its investigation that Smith was 100 percent liable for the accident when it filed its special defense asserting that the plaintiff was contributorily negligent. There are only two averments in the affidavit that might be construed as relating to the issue of probable cause: (1) "Attorney Joseph Grippe filed an answer and special defenses to the amended complaint on May 17, 2016," and (2) "[the defendant] relied on the skill and judgment of Attorney Grippe to draft an appropriate response to the amended complaint . . . ." The defendant, however, did not assert a special defense of advice of counsel, which is a complete defense to a vexatious litigation claim; see *Kazemi* v. *Allen*, supra, 214 Conn. App. 117; although it did argue in its memorandum of law in support of its motion for summary judgment that it relied on the advice of counsel. Nevertheless, the court did not address that argument in light of its determination that the defendant had probable cause to answer the complaint in the manner in which it did. On appeal, the defendant asserts in its brief that its responsive pleadings in the *Smith* action were prepared and filed by counsel, and that it "relied on the independent judgment of counsel to draft an appropriate response to the amended complaint in the [*Smith* action]." Aside from these few assertions, the defendant cited to no authority and provided no analysis or argument in support of a reliance on the advice of counsel claim, or concerning the court's failure to address that claim in its decision granting the motion for summary judgment. Accordingly, in this appeal, we deem any such claim relating to advice of counsel abandoned. See, e.g., *Fraser Lane Associates, LLC* v. *Chip Fund 7, LLC*, 221 Conn. App. 451, 472, 301 A.3d 1075 (2023).

[36] The concurring and dissenting opinion relies on the amount of the jury award in the *Smith* action as evidence of probable cause. We do not believe

1249 (2017), cert. denied, 328 Conn. 902, 177 A.3d 563 (2018); see also *Martin Franchises, Inc.* v. *Cooper U.S., Inc.*, 164 Conn. App. 486, 501, 137 A.3d 882 (2016) ("[w]here the affidavits of the moving party do not affirmatively show that there is no genuine issue of material fact as to all relevant issues in the case, summary judgment should be denied"). Although the question of what facts constitute probable cause is one of law, over which our review is plenary; see *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 94; when the underlying facts that form the basis

that the amount of the jury award in the *Smith* action is relevant to the issue in this case, which concerns whether the defendant met its burden, in moving for summary judgment, of establishing the absence of any genuine issue of material fact that it had probable cause to answer the complaint in the *Smith* action in the manner in which it did and to assert the special defense of contributory negligence. As we have stated in this opinion, the probable cause determination "entails a consideration of whether, on the basis of the facts known by the defendant *at the times* it asserted the special defense and denied or asserted that it lacked sufficient information to admit or deny those allegations, a reasonable person familiar with Connecticut law would have believed that probable cause existed for the defendant to do so." (Emphasis added.) In light of our conclusion that we cannot make a determination of whether probable cause exists in the exercise of our plenary review under the circumstances of this case, in which the underlying facts that form the basis for probable cause are disputed and factual findings must be made by a trier of fact, we do not agree that the amount of damages awarded in the *Smith* action should be viewed as evidence that the defendant had probable cause to deny the material allegations of the complaint. That is especially true given that probable cause may ultimately be found as to the defendant's denials of allegations concerning causation of injuries, but also may be found lacking with respect to the defendant's denials of allegations concerning the cause of the accident. Nevertheless, we do note that the concurring and dissenting opinion's analysis on this point fails to recognize that the jury awarded the plaintiff damages in the amount of $169,928, which amounts to $30,072 less than the $200,000 she sought, not $80,072. Following the jury's verdict, the parties entered into a stipulation that, after a reduction of the tortfeasor's payment of $50,000 to the plaintiff, judgment could enter in the amount of $119,928. The fact that the defendant's obligation to pay the plaintiff was reduced by the $50,000 that the plaintiff already had received in settlement from Smith had no bearing on the jury's determination that the plaintiff had established damages in the amount of $169,928, which the plaintiff received from the defendant and Smith combined.

for probable cause are disputed and factual findings relating thereto must be made by the trier of fact, we cannot make a determination of whether probable cause exists in the exercise of our plenary review, and summary judgment is not appropriate. See *Rozbicki* v. *Sconyers*, supra, 198 Conn. App. 791 (trial court improperly granted defendant's motion for summary judgment because genuine issue of material fact existed as to whether defendant had probable cause to assert special defense); *Cody Real Estate, LLC* v. *G & H Catering, Inc.*, 219 Conn. App. 773, 792, 296 A.3d 214 (it is not within province of Appellate Court to make factual findings), cert. denied, 348 Conn. 910, 303 A.3d 11 (2023).

The present case does not involve a situation in which the facts giving rise to the existence of probable cause are undisputed; rather, a factual finding must be made, at a minimum, as to the defendant's knowledge at the time it filed its answer, amended answers, and special defense of contributory negligence in the *Smith* action. As our Supreme Court explained in *DeLaurentis* v. *New Haven*, supra, 220 Conn. 252–53: "The third requirement for a vexatious suit action is that the defendant's claims lacked 'probable cause.' Whether the facts are sufficient to establish the lack of probable cause is a question ultimately to be determined by the court, but when the facts themselves are disputed, the court may submit the issue of probable cause in the first instance to a jury as a mixed question of fact and law." See *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 90–92 (trial court bifurcated issue of probable cause, conducted evidentiary hearing and then concluded that probable cause existed); *Rockwell* v. *Rockwell*, 196 Conn. App. 763, 771, 230 A.3d 889 (2020) (genuine issue of material fact had to be resolved to determine whether defendant had probable cause to pursue action); see also *Liu* v. *Tangney*, Docket No.

3:19-CV-894 (OAW), 2022 WL 4367594, *7 (D. Conn. September 21, 2022) (parties had material disagreement about whether party's knowledge of facts would satisfy probable cause standard and court could not determine whether party acted without probable cause without first making credibility determination, which was not appropriate on summary judgment).

Accordingly, on the basis of our review of the record, viewed in the light most favorable to the plaintiff, we conclude that the defendant did not meet its burden, as the party moving for summary judgment, of showing the absence of an issue of material fact as to whether it had probable cause for pleading in the manner in which it did in the *Smith* action. Therefore, the court improperly granted the defendant's motion for summary judgment as to the vexatious litigation counts of the complaint on the basis of its probable cause determination.[37] See *Rozbicki* v. *Sconyers*, supra, 198 Conn. App. 781 (defendants were not entitled to summary judgment as to issue of probable cause because genuine issue of material fact existed as to party's knowledge).

The next issue we must address is the proper remedy. As we stated previously in this opinion, the defendant raised five grounds in support of its motion for summary judgment. Because the court based its decision granting the motion solely on the basis of its finding of probable cause, as to which we have determined the court applied an improper standard and will require factual findings that are not appropriate on summary judgment, the court never addressed the other four arguments

---

[37] In light of our determination that the court improperly granted the defendant's motion for summary judgment as to the counts of the complaint alleging vexatious litigation, we need not address the plaintiff's claim that the court improperly denied her the ability to obtain meaningful discovery related to her claims of vexatious litigation prior to granting the defendant's motion for summary judgment.

raised by the defendant in support of its motion for summary judgment. On appeal, the defendant has not argued that, if this court reverses the summary judgment in its favor, the matter should be remanded for further proceedings on its remaining claims that were never addressed by the trial court. Nevertheless, we believe that the proper course of action here is to remand the case to the trial court for further proceedings to address the remaining grounds raised in the defendant's motion for summary judgment. See generally *Kellogg* v. *Middlesex Mutual Assurance Co.*, 211 Conn. App. 335, 356–57, 272 A.3d 677 (2022) (when trial court did not address arguments raised in support of motion for summary judgment due to court's improper reliance on decisions relating to arbitration award and motion to dismiss, appropriate course for Appellate Court was to remand case for further proceedings on motion); *Teodoro* v. *Bristol*, 184 Conn. App. 363, 383–84, 195 A.3d 1 (2018) (reversing summary judgment rendered in favor of defendant and remanding matter for further proceedings on motion); *Greene* v. *Keating*, 156 Conn. App. 854, 860–62, 115 A.3d 512 (2015) (because trial court decided motions for summary judgment on ground not raised by parties and, essentially, did not rule on parties' motions, it was appropriate to remand matter for trial court's consideration of matter in first instance); see also *Singhaviroj* v. *Board of Education*, 124 Conn. App. 228, 236, 4 A.3d 851 (2010) ("[b]ecause a res judicata or collateral estoppel claim is the 'civil law analogue' to a double jeopardy challenge, a court faced with such a claim must resolve that question before trial may commence," and, therefore, court improperly denied motions for summary judgment without determining whether genuine issue of material fact existed with respect to res judicata and collateral estoppel defenses).

### III

The plaintiff's next claim is that the court did not engage in the proper analysis when it granted the defendant's motion for summary judgment as to the counts of her complaint alleging violations of CUTPA and CUIPA. Specifically, the plaintiff argues that the court, in its decision, did not address the CUTPA/CUIPA claims in any meaningful way in that it did not articulate the necessary elements of a cause of action pursuant to CUTPA or CUIPA, and did not discuss her allegations relating to those claims. Instead, the plaintiff argues, the court stated that its determination regarding probable cause rendered it unnecessary to address the other claims, even though probable cause is not a necessary predicate to a claim pursuant to CUTPA or CUIPA. The defendant, relying on *Dorfman* v. *Smith*, supra, 342 Conn. 616, argues that the court properly granted its motion for summary judgment because the plaintiff's CUTPA claims, which are based on alleged violations of CUIPA, are barred by the doctrine of absolute immunity under the litigation privilege. We agree with the defendant.

We first briefly set forth the basis for our Supreme Court's decision in *Dorfman* concluding that the plaintiff's CUTPA claim in that case was "barred by the doctrine of absolute immunity under the litigation privilege." Id. Specifically, the court stated: "A business practice of responding falsely to discovery requests, to the extent it involves '[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue,' is prohibited under CUIPA. General Statutes § 38a-816 (6) (A). The parties have not cited any case law—from this court, the federal courts, or sister state courts—that has addressed whether the litigation privilege applies to claims for violating statutes prohibiting unfair insurance practices. In our own research, we have found only one case addressing this issue. The

United States District Court for the Eastern District of Pennsylvania, in *Harrison* v. *Nationwide Mutual Fire Ins. Co.*, 580 F. Supp. 133, 136 (E.D. Pa. 1983), and its progeny, held that, when an unfair insurance practices claim is premised on pleadings or documents filed in and relevant to an underlying judicial proceeding, the conduct is absolutely privileged, even if the statements were made falsely or maliciously.

"The plaintiff argues, however, that absolute immunity would undermine the legislative intent of CUIPA, which is to hold insurers accountable for misrepresenting facts relating to coverage issues. In essence, the plaintiff argues that CUIPA abrogates absolute immunity as to the conduct alleged under § 38a-816 (6). Contrary to the plaintiff's argument, CUIPA does not explicitly abrogate absolute immunity. Although § 38a-816 (6) in fact prohibits the business practice of misrepresenting facts relating to coverage issues, CUIPA does not impose liability for this conduct by authorizing a private right of action but, instead, limits the remedy under that act to administrative action by the Commissioner of Insurance. Rather than establishing that immunity should be abrogated, § 38a-816 shows that the legislature prescribed remedies other than civil liability for deterring and curing the alleged conduct, and such remedies are available to the plaintiff in the present case. Additionally, the legislature is aware of both this court's precedent regarding the applicability of the litigation privilege to litigation conduct, as well as the various other tools available to the court to regulate and police litigation misconduct. See, e.g., *Chadha* v. *Charlotte Hungerford Hospital*, [272 Conn. 776, 793 n.21, 865 A.2d 1163 (2005)] ('the legislature is presumed to be aware of prior judicial decisions involving common-law rules'). If the legislature thought that the particular litigation conduct at issue—filing false discovery responses—had

become such a systemic problem that neither the judiciary nor the Commissioner of Insurance has been able to police it, the legislature would have been explicit in abrogating the immunity afforded by the litigation privilege.

"Nevertheless, our case law makes clear that an insurer may be held liable under CUTPA for conduct proscribed by § 38a-816 (6). See *Mead* v. *Burns*, 199 Conn. 651, 663, 509 A.2d 11 (1986) ('it is possible to state a cause of action under CUTPA for a violation of CUIPA'). That does not necessarily mean that the legislature intended to abrogate a party's absolute immunity from CUTPA claims based on a business practice of filing false discovery responses. Although there is minimal case law regarding CUIPA and the litigation privilege, there is a wealth of case law regarding CUTPA and the litigation privilege. Courts consistently have applied the litigation privilege to CUTPA claims premised on false communications made during and relevant to an underlying judicial proceeding. See, e.g., *Simms* v. *Seaman*, [308 Conn. 523, 561–62, 69 A.3d 880 (2013)] (discussing federal case law that consistently has held that CUTPA claims premised on false communications made during and relevant to underlying judicial proceeding are barred by litigation privilege); *Bruno* v. *Travelers Cos.*, [172 Conn. App. 717, 722, 727–29, 161 A.3d 630 (2017)] (CUTPA claim against insurance companies was barred by litigation privilege); *Tyler* v. *Tatoian*, [164 Conn. App. 82, 86–87, 93–94, 137 A.3d 801] (CUTPA claim against attorney for communications made in course of prior judicial proceeding was barred by litigation privilege) [cert. denied, 321 Conn. 908, 135 A.3d 710 (2016)]. These holdings are in line with case law from other jurisdictions, the majority of which have applied the litigation privilege to both common-law and statutory causes of action, including

claims for unfair trade practices brought pursuant to the jurisdiction's analogue to CUTPA. . . .

"Under this precedent, the litigation privilege bars CUTPA claims, like the claim at issue, premised solely on general allegations of intentionally false discovery responses because these claims merely challenge the making of false statements. Additionally, there are other remedies available to deter the alleged conduct. See *Tyler* v. *Tatoian*, supra, 164 Conn. App. 93–94. This does not mean, however, that a defendant enjoys absolute immunity from all CUTPA claims under the litigation privilege, even those premised on a violation of CUIPA. Rather, we merely hold that this specific claim—a business practice of filing false discovery responses—is afforded absolute immunity. We recognize that the legislature intended to prohibit certain unfair and deceptive business practices by enacting CUTPA and CUIPA, but the plaintiff has not cited, and we have not discovered, any provision of these statutes that explicitly abrogates the common-law litigation privilege, which, historically, has been applied to false and malicious statements made during and relevant to judicial proceedings. Our holding leaves open the possibility that other CUTPA claims may not be barred by absolute immunity under the litigation privilege. Thus, we conclude that the litigation privilege bars the plaintiff's CUTPA-CUIPA claim." (Citations omitted; footnote omitted.) *Dorfman* v. *Smith*, supra, 342 Conn. 617–20.

In the present case, the plaintiff alleges violations of CUTPA based on a violation of CUIPA in counts four and five of the complaint. Specifically, both counts incorporate the allegations of paragraphs 1 through 64 of count two, which alleges a claim for statutory vexatious litigation. Thus, counts four and five are based on the same conduct underlying the vexatious litigation claims, namely, the defendant's conduct in the *Smith* action of denying allegations of the complaint that it knew to be true and asserting a special defense of contributory negligence that it knew to be false. Count

four further alleges that the defendant's conduct, as set forth, violates CUIPA in that "the defendant made, published, and disseminated statements before the public with respect to the business of insurance that it knew to be untrue, deceptive, or misleading, in violation of . . . § 38a-816 (2)," and that such violations caused the plaintiff an ascertainable loss and damages.[38] Count five alleges a business practice by the defendant of insurance misconduct by filing false pleadings and lists thirteen other cases in which the defendant was alleged to have failed to admit allegations it knew to be true in its answer to a complaint and pleaded an affirmative defense it knew to be false. Count five further alleges that the defendant's general business practice violates § 38a-816 (6) of CUIPA in that the defendant misrepresents facts, and that the plaintiff suffered an ascertainable loss and damages.

We fail to see how these allegations of a business practice of filing false pleadings differ in any meaningful way from the alleged business practice of responding falsely to discovery requests underlying the CUTPA claim at issue in *Dorfman* v. *Smith*, supra, 342 Conn. 617–20. In determining that the CUTPA claim was barred by the litigation privilege, our Supreme Court relied on precedent from other courts, which "consistently have applied the litigation privilege to CUTPA claims premised on false communications made during and relevant to an underlying judicial proceeding." Id., 618. Although our Supreme Court left "open the possibility that other CUTPA claims may not be barred by

---

[38] Notably, the damages claimed by the plaintiff in the present case as a result of the defendant's alleged CUTPA/CUIPA violations are identical to the damages the plaintiff claimed to have sustained for the defendant's CUTPA/CUIPA violation in the *Smith* action, and included damages for "(a) [w]rongfully, intentionally, and maliciously withholding money due to [the plaintiff]; (b) [c]ausing [the plaintiff] to suffer extreme upset, fear, anger, frustration, and distress as a direct result of the defendant's intentional and malicious acts; (c) [c]ausing [the plaintiff] to incur unnecessary legal fees and expenses; and (d) [d]epriving [the plaintiff] of her insurance benefits."

absolute immunity under the litigation privilege"; id., 620; the present case does not present such a situation. The allegations underlying the plaintiff's CUTPA/CUIPA claims in the present case are based on alleged false representations and pleadings of the defendant in an underlying judicial proceeding. Moreover, the plaintiff has not directed this court to any statutory provision abrogating the common-law litigation privilege, "which, historically, has been applied to false and malicious statements made during and relevant to judicial proceedings." Id.

Although we agree with the plaintiff that the court did not apply the correct standard in rendering summary judgment as to the CUTPA/CUIPA counts of her complaint, as the court's probable cause determination was not dispositive of these counts, nonetheless, we affirm the summary judgment rendered in favor of the defendant on these counts on the alternative ground that the claims in counts four and five are barred by the litigation privilege. "[I]t is axiomatic that [an appellate court] may affirm a proper result of the trial court for a different reason. . . . *Silano* v. *Cooney*, 189 Conn. App. 235, 241 n.6, 207 A.3d 84 (2019); see also *Helvering* v. *Gowran*, 302 U.S. 238, 245, 58 S. Ct. 154, 82 L. Ed. 224 (1937) (the rule is settled that if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground)." (Internal quotation marks omitted.) *Tracey* v. *Miami Beach Assn.*, 216 Conn. App. 379, 396 n.19, 288 A.3d 629 (2022), cert. denied, 346 Conn. 919, 291 A.3d 1040 (2023).

The judgment is reversed only with respect to the granting of the defendant's motion for summary judgment as to the vexatious litigation counts of the complaint and the case is remanded for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion ALVORD, J., concurred.